IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRINITY WALL STREET, | |
| Plaintiff, | |
| v. | C.A. No._____ |
| WAL-MART STORES, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST WAL-MART STORES, INC.

Joel Friedlander (Bar No. 3163)
Jeffrey M. Gorris (Bar No. 5012)
Jaclyn Levy (Bar No. 5631)
BOUCHARD MARGULES &
FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
jfriedlander@bmf-law.com
jgorris@bmf-law.com
jlevy@bmf-law.com

*Counsel for the Plaintiff, Trinity Wall Street*

Date: April 1, 2014

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF THE FACTS ....................................................................................... 3

ARGUMENT ..................................................................................................................... 7

    A. THE LEGAL STANDARD ..................................................................................... 7

        1. TRINITY WALL STREET'S RIGHT OF ACTION ......................................... 7

        2. THE STANDARD FOR GRANTING PRELIMINARY RELIEF ................... 7

        3. THE WEIGHT TO BE GIVEN THE GRANTING OF NO-ACTION
           RELIEF BY THE CORPORTATION FINANCE DIVISION ........................... 8

    B. TRINITY WALL STREET HAS A STRONG LIKELIHOOD OF
       PREVAILING MERITS ........................................................................................ 9

        1. THE REGULATORY FRAMEWORK............................................................ 9

        2. WAL-MART HAS FAILED TO SHOW THE PROPOSAL IS
           EXCLUDABLE UNDER RULE 14A-8 ........................................................... 11

        3. THE STAFF'S NO-ACTION LETTER DESERVES NO DEFERENCE ....... 15

    C. PLAINTIFF WILL SUFFER IMMEDIATE IRREPARABLE HARM
       WITHOUT INJUNCTIVE RELIEF ...................................................................... 16

    D. THE BALANCE OF EQUITIES FAVORS THE ISSUANCE OF
       AN INJUNCTION ................................................................................................. 18

    E. INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST BECAUSE
       IT PRESERVES SHAREHOLDER DEMOCRACY........................................... 19

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Rules and Statutes**                                                                                            **Page(s)**

5 U.S.C. § 551 et seq...........................................................................................................10

17 C.F.R. § 240.14a-8(i)(7) ................................................................................................11

17 C.F.R.§ 240.14a-8(a)-(m) ..............................................................................................10

Rule 14a-8(i)(7) ...............................................................................................................passim


**Cases**                                                                                                          **Page(s)**

Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.,
821 F. Supp. 877 (S.D.N.Y. 1993), *aff'd*, 54 F.3d 69 (2d Cir. 1995) ................................10, 14, 16, 20

Apache Corp. v. New York City Emps. Ret. Sys.,
621 F. Supp. 2d 444 (S.D. Tex. 2008) ...................................................................................9

AT&T Co. v. Winback & Conserve Program, Inc.,
42 F.3d 1421 (3d Cir. 1994)...................................................................................................20

Avila v. Correct Care Solutions,
2014 WL 187194 (D. Del. Jan. 15, 2014)................................................................................8

Chevron, U.S.A., Inc. v. Natural Res. Def. Council Inc.,
467 U.S. 837 (1984)...................................................................................................................3

Grimes v. Centerior Energy Corp.,
909 F.2d 529 (D.C. Cir. 1990)............................................................................................11, 12, 13

J.I. Case Co. v. Borak,
377 U.S. 426 (1964)...................................................................................................................7

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,
562 F.3d 553 (3d Cir. 2009)..............................................................................................8, 16, 18, 19

Lovenheim v. Iroquois Brands, Ltd.,
618 F. Supp. 554 (D.D.C. 1985)............................................................................................17

Med. Comm. for Human Rights v. SEC,
432 F.2d 659 (D.C. Cir. 1970), *vacated by*, 404 U.S. 403 (1972)....................................9, 15, 19

New York City Emps. Ret. Sys. v. Dole Food Co., Inc.,
795 F. Supp. 95 (S.D.N.Y. 1992), *dismissed sub nom.*, 969 F.2d 1043 (2d Cir. 1992),
*opinion vacated and appeal dismissed by*, 969 F.2d 1430 (2d Cir. 1992)........................ 8, 15, 16

New York City Emps. Ret. Sys. v. SEC,
45 F.3d 7 (2d Cir. 1995)...................................................................................................... 7, 9

New York City Emps. Ret. Sys. v. Am. Brands, Inc.,
634 F. Supp. 1382 (S.D.N.Y. 1986).................................................................................. 17

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,
290 F.3d 578 (3d Cir. 2002).............................................................................................. 17

Ohio Oil Co. v. Conway,
279 U.S. 813 (1929)........................................................................................................... 18

Pileggi v. Aichele,
843 F. Supp. 2d 584 (E.D. Pa. 2012) ................................................................................ 8

Register v. PNC Fin. Servs. Grp., Inc.,
477 F.3d 56 (3d Cir. 2007)................................................................................................ 11

Roosevelt v. E.I. Du Pont de Nemours & Co.,
958 F.2d 416 (D.C. Cir. 1992) .............................................................................. 7, 10, 19

SEC v. Transamerica Corp.,
163 F.2d 511 (3d Cir. 1947), *cert. denied*, 332 U.S. 847 (1948)...................................... 19

Shepherd v. Danberg,
2008 WL 4284539 (D. Del. Sept. 17, 2008)..................................................................... 8


**Other Authorities**                                                                                 **Page(s)**

Adoption of Amendments to Proxy Rules, SEC Exchange Act Release No. 34-4979,
1954 WL 5772 (Jan. 6, 1954) ........................................................................................... 9

*Global  Responsibility*, Wal-Mart Corporate Webpage, *available at*
http://corporate.walmart.com/global-responsibility/............................................................ 3

SEC Division of Corporation Finance, *Informal Procedures Regarding Shareholder
Proposals*, SEC, *available at* http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-
informal-procedures.htm (last modified Nov. 2, 2011) ..................................................... 9

SEC Exchange Act Release No. 34-40018 (May 21, 1998)............................................... 12, 13

Staff Legal Bulletin No. 14 (CF) (July 13, 2001) .............................................................. 9

Staff Legal Bulletin No. 14C (CF) (June 28, 2005)............................................................ 13

Staff Legal Bulletin No. 14E (CF) (Oct. 27, 2009) ............................................................13, 14-15

*Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals,* Exchange Act Release No. 12,599 (July 7, 1976) (the "1976 Release")........................................................................................................................ 7, 12

Trinity Wall Street, whose full legal name is The Rector, Church-Wardens, and Vestrymen of Trinity Church, in the City of New York, respectfully submits this memorandum of law (the "Memorandum of Law") in support of its motion (the "Motion") for a temporary restraining order and preliminary injunction enjoining defendant Wal-Mart Stores, Inc. ("Wal-Mart," "Defendant" or the "Company") from issuing its 2014 proxy statement and proxy solicitation card without including the shareholder proposal that Trinity Wall Street has submitted to Wal-Mart for inclusion in its proxy materials for Wal-Mart's 2014 Annual Shareholders' Meeting on or about April 22, 2014 (the "2014 Proxy Materials").

## PRELIMINARY STATEMENT

Trinity Wall Street has brought this action for a declaratory judgment and injunctive relief to vindicate its right as a shareholder of Wal-Mart to have Wal-Mart include with its proxy materials a shareholder proposal submitted by Trinity Wall Street (the "Proposal"), which Wal-Mart wrongfully intends to exclude when it issues the 2014 Proxy Materials in advance of the Annual Shareholders' Meeting on June 6, 2014. Section 14(a) of the Securities and Exchange Act (the "1934 Act") and Rule 14a-8 promulgated thereunder, 17 C.F.R. § 240.14a-8, require Wal-Mart to include the Proposal with its 2014 Proxy Materials. Trinity Wall Street, along with Wal-Mart's other shareholders, faces imminent and irreparable loss of its right to vote on the Proposal as a result of Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials.[1] Accordingly, Trinity Wall Street requires a temporary restraining order and preliminary

---

[1] Pursuant to Rule 14a-8, Wal-Mart had to file a no-action request no later than 80 calendar days before it files its definitive proxy statement and form of proxy with the Securities and Exchange Commission (the "Commission"). Wal-Mart filed its no-action request on January 30, 2014, and the 80-day period expires on April 22, 2014. However, without a temporary restraining order that enjoins the printing of the 2014 Proxy Materials as well as their filing and distribution, Wal-Mart could place itself in a position where the reprinting of the 2014 Proxy Materials could entail great expense. As shown in the section of this Memorandum that discusses irreparable harm, the inclusion of the Proposal only in a supplemental proxy statement would be highly prejudicial to Trinity Wall Street's chances to gain support for the Proposal.

injunction to vindicate its rights as a shareholder and this Memorandum of Law is submitted in support of Trinity Wall Street's Motion for that relief.

The Proposal asks the Wal-Mart board of directors (the "Board"), acting through one of it committees, to exercise oversight over management's formulation and implementation of, and public reporting concerning, policies and standards to guide management's decision whether or not Wal-Mart should sell products falling in one or more of three categories: products that are 1) especially dangerous to the public, 2) pose a substantial risk to Wal-Mart's reputation and 3) would reasonably be considered offensive to the community and family values that Wal-Mart seeks to associate with its brand. Because these three classes of products all relate to matters of public interest, concern and debate, to Wal-Mart's good standing in the community, to the ethical conduct of its business and to a significant source of risk to customer retention and attraction, Trinity Wall Street is acting reasonably and in conformance with the requirements of Rule 14a-8 when it asks the Board to adopt governance procedures with respect to these matters.

Wal-Mart has refused to include the Proposal in the 2014 Proxy Materials because it alleges that the Proposal falls within an exception specified in Rule 14a-8 to a shareholder's right to have a proposal included in the company's proxy materials. The exception on which Wal-Mart relies is found in Rule 14a-8(i)(7) and reads "***Management functions***: [the proposal may be excluded if] the proposal deals with a matter relating to the company's ordinary business operations." Wal-Mart's position that the exception applies is contrary to the plain language of the Proposal. The Proposal deals with a matter relating to corporate governance and not to ordinary business operations. It is also inconsistent with the Commission's consistent interpretation of this provision to require inclusion of proposals dealing with important issues of

corporate or social policy that transcend any everyday business decisions that might be implicated.

Wall-Mart applied for non-binding and informal advice from the staff of the Commission's Corporation Finance Division (the "Division") that it would not recommend an enforcement action against Wal-Mart if Wal-Mart omitted Trinity Wall Street's Proposal. This advice is commonly called no-action relief, and it is not entitled to *Chevron* deference.[2]  In granting Wal-Mart's request for no-action relief here the staff of the Division appears to have misunderstood Trinity Wall Street's position that this is a governance proposal or, if they did understand, ignored that position and the plain language of the Rule and the past interpretations of the Commission.

Accordingly this Court should require that the Proposal be included the 2014 Proxy Materials.

## STATEMENT OF THE FACTS

Wal-Mart, the world's largest retailer, is a publicly listed corporation organized under the laws of the State of Delaware. Its stated corporate ethic is to help people save money and to live better: ("Save money. Live Better."). Wal-Mart recognizes that due to its size and mission, it has "an opportunity and a responsibility to make a difference on the big issues that matter to us all." *Global Responsibility*, Wal-Mart Corporate Webpage, *available at* http://corporate.walmart.com/global-responsibility/. Thus Wal-Mart has associated its brand with public betterment, ethical behavior and good citizenship.

As part of its effort to meet these goals, the Board established the Compensation, Nominating and Governance Committee (the "Committee") whose general purpose is to "assist

---

[2] In *Chevron, U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837, 844 (1984), the Supreme Court held that courts typically should defer to binding and final decisions by agencies concerning the interpretation of the statutes and rules  they administer.

the Board in the implementation of sound corporate governance principles and practices." Decl. of Stacy Brandom, Ex. A. Among other responsibilities, the Committee is currently charged with "review[ing] the Company's reputation with external constituencies and recommend[ing] to the Board any proposed changes to the Company's policies, procedures, and programs as a result of such review." *Id.*

Trinity Wall Street is an Episcopal parish offering daily worship services and faith formation programs at Trinity Church, St. Paul's Chapel, and online at trinitywallstreet.org. Trinity Wall Street shares Wal-Mart's goals of making a difference in the communities it serves and is engaged in numerous charitable activities, including Trinity Grants, which has provided $72 million in funding to 85 countries since 1972 and St. Margaret's House, which provides subsidized housing to the elderly and disabled. Trinity Wall Street is a shareholder of Wal-Mart and has held at least $2,000 worth of shares of Wal-Mart stock continuously for more than one year prior to December 18, 2013. Decl. of Stacy Brandom, Ex. C.

By letter dated December 18, 2013, Trinity Wall Street sought to exercise its right as a shareholder of Wal-Mart to submit the Proposal for shareholder vote. Decl. of Stacy Brandom, Ex. B. The Proposal sought to ensure appropriate and transparent oversight by the Board of the sale by Wal-Mart of products that especially endanger public safety and well-being, risk impairing Wal-Mart's reputation, or offend the family and community values integral to Wal-Mart's brand. *Id.* Specifically, the Proposal states as follows:

**RESOLVED:**

Stockholders request that the Board amend the Compensation, Nominating and Governance Committee charter (or add an equivalent provision to another Board committee charter) as follows:

"27. Providing oversight concerning the formulation and implementation of, and the public reporting of the formulation and implementation of,

4

> policies and standards that determine whether or not the Company should
> sell a product that:
> 1) especially endangers public safety and well-being;
> 2) has the substantial potential to impair the reputation of the Company;
>    and/or
> 3) would reasonably be considered by many offensive to the family and
>    community values integral to the Company's promotion of its brand."

The proposal also provided that:

> This oversight and reporting is intended to cover policies and standards
> that would be applicable to determining whether or not the Company
> should sell guns equipped with magazines holding more than ten rounds of
> ammunition ("high capacity magazines") and to balancing the benefits of
> selling such guns against the risks that these sales pose to the public and to
> the Company's reputation and brand value.

Decl. of Stacy Brandom, Ex. D.

On January 30, 2014, Wal-Mart wrote to the Division and stated its intention to omit the

Proposal from the 2014 Proxy Materials (the "No-Action Request") on the grounds that the

Proposal deals with matters relating to Wal-Mart's ordinary business operations and is thus

excludable pursuant to Rule 14-8(i)(7). Decl. of Stacy Brandom, Ex. E. Specifically, Wal-Mart

argued that (1) the Proposal involved decisions concerning the products offered for sale by Wal-

Mart, which falls under its ordinary business operations; (2) the Proposal was overbroad and, as

a result, did not implicate a significant policy issue and only implicated Wal-Mart's general

business operations; and (3) the Proposal involved Wal-Mart's activities as a retailer, as opposed

to as a manufacturer, of the firearms and related products referenced by the Proposal. *Id.*

On February 4, 2014, Trinity Wall Street responded to the No-Action Request, and

explained to the Division that the Proposal was proper in all respects under Section 14(a) of the

1934 Act and the rules promulgated thereunder and therefore had to be included in the 2014

Proxy Materials. Decl. of Stacy Brandom, Ex. F (the "No-Action Reply"). Specifically, Trinity

Wall Street explained that the Proposal does not deal with ordinary business operations because,

among other reasons: (i) the Proposal addresses Wal-Mart's corporate governance through Board oversight of important merchandizing policies and is substantially removed from particularized decision-making in the ordinary course of business; (ii) the Proposal concerns Wal-Mart's standards for avoiding community harm while fostering public safety and corporate ethics and does not relate to any individual product; (iii) the Proposal raises substantial issues of corporate policy, namely a concern for the safety and welfare of the communities served by Wal-Mart's stores; and (iv) the corporate policy addressed by the Proposal is not invalidated on the basis that Wal-Mart is a retailer and not a manufacturer.

Nevertheless, on March 20, 2014, the Division issued a no-action letter (the "No-Action Letter"), informing Wal-Mart that there appeared to be "some basis" for its view that it could exclude the Proposal under Rule 14a-8(i)(7). Decl. of Stacy Brandom, Ex. G. With no analysis, the Division stated in a conclusory manner that the Proposal related to "products and services offered for sale" by Wal-Mart, noting that "[p]roposals concerning the sale of particular products and services" are "generally excludable under rule 14a-8(i)(7)" and, as a result, the Division would not recommend enforcement action if Wal-Mart omitted the Proposal from its 2014 Proxy Materials in reliance on Rule 14a-8(i)(7). *Id.*

As a result of the No-Action Letter, Wal-Mart intends to exclude the Proposal from its 2014 Proxy Materials, which it is set to mail to shareholders on or about April 22, 2014. Wal-Mart's failure to include the Proposal will deprive shareholders of the opportunity to consider and vote upon an important corporate governance proposal to improve Board oversight regarding merchandizing decisions that raise concerns of policy and injury to the company.

## ARGUMENT

### A.    THE LEGAL STANDARD

#### 1.    Trinity Wall Street's Right of Action

It is well-settled that a shareholder has an implied right of action under Section 14 of the

Exchange Act and the Rules promulgated thereunder.  *See, e.g., J.I. Case Co. v. Borak*, 377 U.S.

426, 430-31 (1964) (finding an implied private right of action for violations of Section 14(a) of

the Act); *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 425 (D.C. Cir. 1992) ("In

sum, in view of Congress' intent that section 14(a) have real force, relevant judicial precedent,

and the agency's view of the private right, we hold that shareholders may seek appropriate

declaratory and injunctive relief when management refuses to distribute their proposals."); *New

York City Emps. Ret. Sys. v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995) (a shareholder has a remedy to

"enjoin the board to include their proposal in the proxy materials"); *Statement of Informal

Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals,* Exchange

Act Release No. 12,599 (July 7, 1976), in [1976–77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶

80,635, at 86,604 (1976) (the "1976 Release") (a shareholder has a right "to institute a private

action with respect to the management's intention to omit that proposal from its proxy

materials.").

#### 2.    The Standard for Granting Preliminary Relief

The Third Circuit uses a four factor test to determine whether a preliminary injunction

should be issued.  Courts in the Third Circuit require a party seeking a preliminary injunction to

show: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which

the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which

the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) that granting

the relief is in the public interest. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d

553, 556 (3d Cir. 2009).

Courts in this District have recognized that the same elements that apply to preliminary

injunctions also apply to temporary restraining orders. *See Avila v. Correct Care Solutions*, 2014

WL 187194, at \*1 (D. Del. Jan. 15, 2014); *Shepherd v. Danberg*, 2008 WL 4284539, at \*1 (D.

Del. Sept. 17, 2008) ("Generally speaking, courts apply the standards for granting a preliminary

injunction in determining the propriety of issuing a temporary restraining order.").

A temporary restraining order serves to maintain the status quo pending resolution of the

preliminary injunction request. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("A

temporary restraining order is a 'stay put,' equitable remedy that has its essential purpose the

preservation of the status quo while the merits of the cause are explored through litigation.")

(citing *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002)). As explained

below, that function is needed here so that Wal-Mart will not incur substantial printing expenses

prior to the decision on the preliminary injunction or, if the preliminary injunction has not been

decided by April 22, 2014, will not file and disseminate its proxy materials without inclusion of

the Proposal.

     **3.**     **The Weight to Be Given the Granting of No-Action Relief by the Corporation Finance Division**

That the Division issued the No-Action Letter at the Company's request has no

precedential weight and is not entitled to *Chevron* deference. *See supra* note 2. No-Action

letters are not binding on the parties or this Court. *See New York City Emps. Ret. Sys. v. Dole

Food Co., Inc.*, 795 F. Supp. 95, 100-101 (S.D.N.Y. 1992), *dismissed sub nom.*, 969 F.2d 1043

(2d Cir. 1992), *opinion vacated and appeal dismissed by*, 969 F.2d 1430 (2d Cir. 1992) (SEC no-

action letters do not bind courts). They are not reasoned decisions by the Commission and are

informal staff advice not subject to judicial review under the Administrative Procedure Act. 5 U.S.C. § 551 et seq.

Instead, the Division itself has pointed out that such letters reflect only the Division's "informal views regarding the application of Rule 14a-8" and its "determinations do not and cannot adjudicate the merits of a company's position with respect to a proposal." Staff Legal Bulletin No. 14 (CF) (July 13, 2001). Indeed, the Division's disclaimer on its no-action letters provides that only "a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials." SEC Division of Corporation Finance, *Informal Procedures Regarding Shareholder Proposals*, SEC, *available at* http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm (last modified Nov. 2, 2011).

Thus, a court must "independently analyze the merits of a dispute." *Apache Corp. v. New York City Emps. Ret. Sys.*, 621 F. Supp. 2d 444, 449 (S.D. Tex. 2008). At their strongest, no-action letters can only provide a persuasive rationale. *See New York City Emps. Ret. Sys. v. SEC*, 45 F.3d at 14 (noting that no-action letters are not entitled to any "great deference"). As shown below, no such persuasive rationale is advanced by the Division's response to Wal-Mart's no-action relief request here.

## B.   TRINITY WALL STREET HAS A STRONG LIKELIHOOD OF PREVAILING ON THE MERITS

### 1.   The Regulatory Framework

"Congress intended by its enactment of section 14 . . . to give true vitality to the concept of corporate democracy." *Med. Comm. for Human Rights v. SEC*, 432 F.2d 659, 676 (D.C. Cir. 1970). Section 14(a) and the rules promulgated thereunder ensure that shareholders are provided with sufficient information to make an informed vote; that a fair and transparent process for

soliciting those votes is in place; and that shareholders can participate in the process of determining what matters are put before their peers for a vote. In other words, Section 14(a) and its accompanying rules and regulations not only ensure that the ballots are complete and the ballot process is robust, but also provides shareholders with the means of determining what is on the ballot to begin with.

Rule 14a-8 allows shareholders "[a]ccess to management proxy solicitations to sound out management views and to communicate with other shareholders on matters of major import." *Roosevelt*, 958 F.2d at 421. It provides the procedures for submitting shareholder proposals, prescribes when a company must include a shareholder proposal in the company's proxy statement, and lists the circumstances under which a shareholder proposal may properly be excluded by the company. *See* 17 C.F.R.§ 240.14a-8(a)-(m). If a shareholder satisfies Rule 14a-8's eligibility and procedural requirements, a company may exclude a proposal *only if* it falls within thirteen specifically enumerated categories. Notably, the company bears the burden of showing that such an exception applies, and if it fails in this burden, it must include the proposal. *See, e.g., Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 882 (S.D.N.Y. 1993), *aff'd*, 54 F.3d 69 (2d Cir. 1995) (company bears burden of demonstrating that shareholder proposal can be excluded); *see also* Adoption of Amendments to Proxy Rules, SEC Exchange Act Release No. 34-4979, 1954 WL 5772 (Jan. 6, 1954) (same).

Because Wal-Mart has not satisfied, and cannot satisfy, its burden of showing that the Proposal is improper, Trinity Wall Street has a strong likelihood of success on the merits of its claim.

There is no dispute that Trinity Wall Street has satisfied all applicable eligibility and procedural requirements. Accordingly, Wal-Mart may only exclude the Proposal under Rule

14a-8 if it can demonstrate that the Proposal falls within an enumerated exception.  It cannot do so.

### 2.      Wal-Mart Has Failed to Show the Proposal is Excludable Under Rule 14a-8

Wal-Mart argues that exclusion of the Proposal is justified under Rule 14a-8(i)(7)—the only exclusion it asserts applies to the Proposal.  *See* No-Action Request, Decl. of Stacy Brandom, Ex. E.  For the same reasoning outlined in Trinity Wall Street's No-Action Reply, Rule 14a-8(i)(7) does not apply, and Wal-Mart has failed to meet its burden to show that the Proposal is excludable under any of the enumerated exceptions under Rule 14a-8.  *See* Decl. of Stacy Brandom, Ex. F.

Rule 14a-8(i)(7) reads "***Management functions***: [the proposal may be excluded if] the proposal deals with a matter relating to the company's ordinary business operations."  17 C.F.R. § 240.14a-8(i)(7).  In this case the "matter" that the Proposal "deals with" is not Wal-Mart's ordinary business operation but rather with corporate governance and Board oversight of merchandizing policies of major import to the public and the Company.  It is substantially removed from particularized decision-making in the ordinary course of business.

The phrase "ordinary business" has "no precise definition."  *Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C. Cir. 1990).  However, its meaning in the shareholder proposal context does not deviate from its plain meaning—the first step in interpreting any regulation.  *See Register v. PNC Fin. Servs. Grp., Inc.*, 477 F.3d 56, 67 (3d Cir. 2007) ("When interpreting statutes or regulations, the first step is to determine whether the language at issue has a plain and unambiguous meaning.").  As such "ordinary business" means what it says: the day-to-day functioning of a company.  The need for a straightforward reading is heightened by the unusual Q&A format of Rule 14a-8, attached in its entirety hereto as Appendix A, which was intended to be friendly and understandable to the average shareholder.  The Commission has said that

ordinary business matters are those "business matters that are mundane in nature and do not involve any substantial policy." *See* 1976 Release. That statement cannot be made of the Proposal since it concerns only the most policy-sensitive decisions that a retailer is called on to make and solely applies to the corporate governance processes that provide oversight of those policies. Shall the company sell video games promoting violence, music with sexually explicit lyrics, assault rifles capable of inflicting mass murder, or products that reinforce racial stereotypes such as Washington Redskins T-shirts? The Proposal does not call on the Board or any of its committees to make these decisions but to oversee management's establishment and disclosure of policies and standards to guide their resolution.

The Division explained in 1998 that the determination of ordinary business rested on two considerations. *See* SEC Exchange Act Release No. 34-40018 (May 21, 1998). First, whether the subject matter is "so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight." *Id.* Second, "the degree to which the proposal seeks to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Id.* The underlying policy of the ordinary business exclusion is simple: to restrict the "resolution of ordinary business problems to management and the board of directors" because it is "impracticable" for shareholders to resolve these problems at the annual meeting. *Id.*; *see also Grimes*, 909 F.2d at 531 (the purpose of the "ordinary business operation" is to prevent shareholders from seeking to "assert the power to *dictate the minutiae of daily business decisions*") (emphasis added). This is highlighted by the title of Rule 14a-8(i)(7): "Management Functions."

In later years, the Division clarified the logical corollary of the above interpretations: proposals focusing on a general governance of a corporation, including in the reduction of risk, should not be excluded as infringing on a company's right to conduct its "ordinary business" *Grimes*, 909 F.2d at 531. For example, in 2005 the Division wrote that shareholder proposals addressing risks to public health or the environment do not constitute an ordinary business concern:

> To the extent that a proposal and supporting statement focus on the company minimizing or eliminating operations that may adversely affect the environment or the public's health, we do not concur with the company's view that there is a basis for it to exclude the proposal under rule 14a-8(i)(7).

Staff Legal Bulletin No. 14C (CF) (June 28, 2005). Likewise in 2009, the Division recognized that the role of a company's board in assessing risk was critical to a company's governance and transcended ordinary business: "[W]e note that there is widespread recognition that the board's role in the oversight of a company's management of risk is a significant policy matter regarding the governance of the corporation." Staff Legal Bulletin No. 14E (CF) (Oct. 27, 2009).

The Proposal does not relate to Wal-Mart's "ordinary business" operations as described by the Commission and the Division. It seeks neither to supplant management's day-to-day decision-making nor to micro-manage the Company. *See* SEC Exchange Act Release No. 34-40018 (May 21, 1998). Instead, the Proposal provides for an improvement to Wal-Mart's corporate governance. Specifically, it suggests that a Board committee charter be amended to provide for Board oversight and reporting on the policies and procedures governing Wal-Mart's product sale determinations and Wal-Mart's consideration of public safety and reputational risks in connection with those determinations.

The Proposal ensures that any "day-to-day" decision-making concerning the matters raised in the Proposal is reserved to the management of Wal-Mart pursuant to policies created by

management with Board oversight. The Proposal never attempts to dictate what products should or should not be sold. Implementation of the Proposal would not constitute meddling in ordinary course decision-making. It instead requests engagement on broad strategic considerations at the Board level.

To meet its burden to exclude the Proposal, it is not enough for Wal-Mart to claim simply that the Proposal relates to ordinary business because it touches on the sale of products. The word "relate" in Rule 14a-8(i)(7) should be given a meaning consistent with the purpose of the exception as described above and not one drawn from indirect relationships as opposed to proposals that seek to dictate particular merchandising choices. If the word "relate" makes excludable governance and social policy proposals of great import because they involve policies that will have some impact on business operations, then shareholder proposals will be drastically restricted to matters of executive compensation and the election of directors. That is not the law.[3] *See Amalgamated Clothing & Textile Workers Union*, 821 F. Supp. at 890 ("[W]hether a company may exclude a proposal should not depend on whether the proposal could be characterized as involving some day-to-day business matter. Rather, the proposal may be excluded only after the proposal is *also* found to raise no substantial policy consideration."). Here, the Proposal addresses the Board's role in the oversight of the management of risks to public health and safety and reputation, which is itself a "significant corporate policy matter regarding the governance of the corporation." Staff Legal Bulletin No. 14E (CF) (Oct. 27,

---

[3] It appears that one member of the Commission believes Rule 14a-8 and its application should be tightened to exclude certain significant policy issue shareholder proposals that are unrelated to shareholder value and which are made by shareholders with minimal holdings. Daniel M. Gallagher, Comm'r, U.S. SEC, Remarks at the 26th Annual Corporate Law Institute at Tulane University Law School: Federal Preemption of State Corporate Governance (Mar. 27, 2014), *available at* http://www.sec.gov/News/Speech/Detail/Speech/1370541315952#.UzWdf6s_HTQ. Of course it is the province of the Commission and not the courts to change the terms of Rule 14a-8. Moreover, Trinity Wall Street believes that adoption of its proposal will add to shareholder value by limiting risk, increasing brand integrity and promoting the appeal of the Wal-Mart shopping experience to Wal-Mart's existing and future customer base.

2009). A proposal that focuses on significant strategic decision-making—even if that strategy will ultimately affect some ordinary business decisions—is not excludable. *See New York City Emps. Ret. Sys. v. Dole*, 795 F. Supp. at 100 (holding that "even if the proposal touches on the way daily business matters are conducted, the statement may not be excluded if it involves a significant strategic decision as to those daily business matters").

Wal-Mart, while acknowledging "the significant policy issue raised by gun violence," sought no-action relief on the basis that it was overbroad and did not address a significant policy issue because it was not restricted to the sale of firearms. *See* Decl. of Stacy Brandom, Ex. E at 5. However, in addition to complaining about the breadth of the Proposal, Wal-Mart also seeks to exclude the Proposal on the basis that it is too specifically focused on products offered for sale. *Id.* at 3-5. This implicit Catch-22 recalls the D.C. Circuit's refusal to countenance an interpretation of Rule 14a-8 that would "permit the exclusion of practically any shareholder proposal on the grounds that it is either 'too general' or 'too specific.'" *Med. Comm. for Human Rights*, 432 F.2d at 679. The Proposal is neither too general nor too specific. Rather, it strikes the right balance by focusing on important, general public and corporate policy concerns while preserving management's function of determining, subject to board oversight, what those policies should be and how to implement them.

### 3.     The Staff's No-Action Letter Deserves No Deference

The No-Action Letter sent by the Division in response to Wal-Mart's request provides no persuasive analysis. First, the No-Action Letter is a pro forma document that provides minimal reasons for its conclusion. *See* Decl. of Stacy Brandom, Ex. G. Second, the No-Action Letter takes no definitive position, merely finding that there is "some basis" for Wal-Mart's view that it may exclude the Proposal. *Id.* Third, in its generic reasoning, the Division mischaracterizes the Proposal, excluding it for concerning the "sale of particular products and services," when the

Proposal does not focus on any particular product. *Id.* Even Wal-Mart characterizes the

Proposal as focusing on "a wide variety of the products offered for sale." No-Action Request,

Decl. of Stacy Brandom, Ex. E. Such "erroneous characterization" removes any persuasive

authority the No-Action Letter may have. *Amalgamated Clothing & Textile Workers Union*, 821

F. Supp. at 888 ("The SEC's views on the issues raised in the 1991 proposal are unclear, because

the staff based its conclusion partly on an erroneous characterization of the proposal.").

Finally, the Division's body of no-action letter precedent, even if authoritative,[4] provides

no guidance with respect to the Proposal. The relevant shareholder proposals addressed therein

that relate to products and services were excluded under Rule 14a-8(i)(7) on the basis that they

requested that a company sell, or cease selling, a particular product or product line.[5] In contrast,

the Proposal addresses corporate governance failures on a board level and leaves the sale of

products completely within the discretion of management.

## C.  PLAINTIFF WILL SUFFER IMMEDIATE IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.

The second factor that the Court must consider is "the extent to which the moving party

will suffer irreparable harm without injunctive relief." *Liberty Lincoln-Mercury, Inc. v. Ford*

*Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009). The standard for evaluating whether a plaintiff

---

[4] The body of the Division's no-action letters should not be taken as authoritative interpretations of Rule 14a-8(i)(7). As detailed above, these no-action letters are informal and provide no rationale or analysis for the decisions. Except in directly analogous situations, identifying a coherent policy from these informal letters is an exercise in reading tea leaves. *See New York City Emps. Ret. Sys. v. Dole*, 795 F. Supp. at 100-01 ("However, the SEC "No–Action" letters contain scarcely any analysis, and, while they are entitled to deference they do not bind this Court.").

[5] *See Wells Fargo & Co.*, SEC No-Action Letter (Jan. 28, 2013, *recon. denied,* Mar. 4, 2013) (requesting the cessation of sale of direct deposit advance lending services); *Pepco Holdings, Inc.* SEC No-Action Letter (Feb. 18, 2011) (concerning the sale of solar technology products); *Wal-Mart Stores, Inc. (Albert)* SEC No-Action Letter (Mar. 30, 2010) (concerning sale of locally produced and packaged food); *Wal-Mart Stores, Inc. (Porter)* SEC No-Action Letter (Mar. 26, 2010) (concerning sale of products manufactured or produced in the U.S.); *Marriott Int'l, Inc.* SEC No-Action Letter (Feb. 13, 2004) (concerning the sale of sexually explicit content in hotel gift shops and television programming); *The Kroger Co.* SEC No-Action Letter (Mar. 20, 2003) (requesting that the company cease the use of loyalty cards).

16

seeking a preliminary injunction will suffer irreparable harm if the injunction is not issued is whether the potential harm cannot be redressed following trial. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 595 (3d Cir. 2002).

Courts routinely have held that the wrongful exclusion of shareholder proposals under Rule 14a-8 would result in irreparable harm: "the shareholder proposal rule is perhaps the only means by which a shareholder has any realistic chance of being taken seriously by the management of a large, publicly-held corporation, or of exercising along with his fellow shareholders, any meaningful corporate suffrage." *New York City Emps. Ret. Sys. v. Am. Brands, Inc.*, 634 F. Supp. 1382, 1388 (S.D.N.Y. 1986). For this reason, "irreparable harm occurs to a shareholder whose proposal is wrongly excluded . . . ." *Id.*; *Lovenheim v. Iroquois Brands, Ltd.*, 618 F. Supp. 554, 561 (D.D.C. 1985) (finding that plaintiff would "suffer irreparable harm by losing the opportunity to communicate his concern with those shareholders not attending the upcoming shareholder meeting"). Notably, Courts have found irreparable harm regardless of the likely outcome of the shareholder vote. *Id.*

Wal-Mart's proxy materials are going to be mailed imminently—likely on or around *April 22, 2014*—and the Annual Meeting is expected to take place on June 6, 2014. Trinity Wall Street and the rest of Wal-Mart's shareholders would suffer irreparable injury should Wal-Mart not include Trinity Wall Street's Proposal in its mailing because they would be deprived of their voice on the Proposal. Such an irreparable harm would incur upon the mailing of the 2014 Proxy Materials, even if Wal-Mart reserved the right to supplement the materials with the Proposal. In such an instance, many shareholders would likely vote on the first card excluding Trinity Wall Street's proposal before receiving the supplemental card, and would be unlikely to vote again on a second card that contains one additional proposal. Trinity Wall Street would, in effect, lose the

opportunity to have the Proposal adequately considered by the full body of Wal-Mart shareholders. The same prejudice would arise if, in the absence of the relief sought, Wal-Mart could claim that the printing costs it had incurred for the 2014 Proxy Materials precluded it from including the Proposal therein.

**D.     THE BALANCE OF EQUITIES FAVORS THE ISSUANCE OF AN INJUNCTION**

The third factor that the Court must consider is "the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued" and thus balance the relevant equities. *Liberty Lincoln-Mercury*, 562 F.3d at 556. Although Trinity Wall Street submits that it has a strong likelihood of succeeding on the merits of its claim, even if this Court concludes that Trinity Wall Street's complaint merely raises sufficiently serious questions on the merits to make it fair ground for litigation, a temporary restraining order and preliminary injunction should still issue, as the balance of hardships in this case tips decidedly in Trinity Wall Street's favor. Whether or not an injunction issues, Wal-Mart will mail its proxy material to shareholders imminently. The added burden on Wal-Mart of including the Proposal in its mailing is *de minimis*. In contrast, the hardship that will be visited upon Trinity Wall Street and other Wal-Mart shareholders if the Proposal is not included is great; Trinity Wall Street will forever lose its statutory right to communicate with other shareholders in advance of the Annual Meeting and all stockholders will lose forever their right to know, or vote on, the Proposal.

It is axiomatic that where, as here, "the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application is denied, . . . while if the injunction be granted the injury to the opposing party, . . . will be inconsiderable, . . . the injunction usually will be granted." *Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929); *see also* Wright & Miller, 11A *Fed. Prac. & Proc.* §

18

2948.2 (2013).  Accordingly, a careful weighing of the balance of hardships in this case strongly supports the issuance of an injunction.

## E.    INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST BECAUSE IT PRESERVES SHAREHOLDER DEMOCRACY

The final factor that courts consider to assess the propriety of injunctive relief is whether such relief is in the "public interest." *Liberty Lincoln-Mercury*, 562 F.3d at 556.  Here, the issuance of a temporary restraining order and preliminary injunction ordering inclusion of Trinity Wall Street's proposal in the 2014 Proxy Material is in the public interest because it protects the rights of shareholders to meaningfully participate in the proxy solicitation process.  *See Roosevelt*, 958 F.2d at 421-422 ("[S]ection 14(a) shelters use of the proxy solicitation process as a means by which stockholders may become informed about management policies and *may communicate with each other*.") (emphasis added).

Further, the preliminary relief vindicates the right to shareholder democracy promoted by Congress through Section 14(a) and recognized by the courts.  *See SEC v. Transamerica Corp.*, 163 F.2d 511, 518 (3d Cir. 1947), *cert. denied*, 332 U.S. 847 (1948) (stating that "the control of great corporations by a very few persons was the abuse at which Congress struck in enacting Section 14(a)"); *see also Med. Comm. for Human Rights v. SEC*, 432 F.2d 659, 680-81 (D.C. Cir. 1970) *vacated by*, 404 U.S. 403 (1972) ("[S]ection 14(a)['s] overriding purpose is to assure to corporate shareholders the ability to exercise their right - some would say their duty - to influence the important decisions which affect them in their capacity as stockholders and owners of the corporation.").  Due to the stiff time constraints of the proxy process, without a temporary restraining order and preliminary injunction relief, companies would regularly be able to exclude proposals from proxy materials and deprive shareholders of an opportunity to vote on the proposal, all before a shareholder could obtain a ruling on the merits of the exclusion.  Depriving

shareholders of their vote deprives them of their voice. *See Amalgamated Clothing & Textile Workers Union*, 54 F.3d. at 71-72 ("[W]e hold that the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.").

Moreover, since Trinity Wall Street has demonstrated a likelihood of success on the merits and irreparable injury, there is a strong argument that it is in the public interest to grant the injunctive relief requested herein. *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."). Thus, here, the public interest would best be served by enjoining Wall-Mart from excluding the Proposal from its 2014 Proxy Materials.

## CONCLUSION

For the foregoing reasons, Trinity Wall Street respectfully submits that its motion for a temporary restraining order and preliminary injunction should be granted.

<div style="margin-left:auto;">

*/s/ Joel Friedlander*
Joel Friedlander (Bar No. 3163)
Jeffrey M. Gorris (Bar No. 5012)
Jaclyn Levy (Bar No. 5631)
BOUCHARD MARGULES &
FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
jfriedlander@bmf-law.com
jgorris@bmf-law.com
jlevy@bmf-law.com

</div>

Dated: April 1, 2014

*Counsel for the Plaintiff, Trinity Wall Street*