IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRINITY WALL STREET,

        Plaintiff,

v.

WAL-MART STORES, INC.,

        Defendant.

C.A. No. _____

## VERIFIED COMPLAINT

Trinity Wall Street, whose full legal name is The Rector, Church-Wardens and Vestrymen of Trinity Church in the City of New York, by its undersigned counsel, alleges as follows:

### NATURE OF THE CASE

1. Trinity Wall Street brings this action for a declaratory judgment and injunctive relief to vindicate its right as a shareholder of Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant") to have Wal-Mart include with its proxy materials a shareholder proposal submitted by Trinity Wall Street (the "Proposal"), which Wal-Mart wrongfully intends to exclude when it issues its proxy materials for Wal-Mart's 2014 Annual Shareholders' Meeting on or about April 22, 2014 (the "2014 Proxy Materials").

2. Section 14(a) of the Securities Exchange Act (the "1934 Act") and Rule 14a-8 promulgated thereunder, 17 C.F.R. § 240.14a-8, require Wal-Mart to include the Proposal with its 2014 Proxy Materials. Trinity Wall Street, along with Wal-Mart's other shareholders, faces

imminent and irreparable loss of its right to vote on the Proposal as a result of Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials.[1]

3. Trinity Wall Street is the beneficial owner of at least $2,000 dollars of Wal-Mart shares and has complied with all of the procedures and requirements of Rule 14a-8 thereby fully perfecting its right to have the Proposal included in the 2014 Proxy Materials. None of the exceptions to a shareholder's right to have its proposal included are applicable. The Proposal is legal under Delaware law, and is a proper subject for action by Wal-Mart's shareholders within the meaning of Rule 14a-8. Accordingly, Wal-Mart's decision to exclude the Proposal from its 2014 Proxy Materials is in violation of law.

4. The Proposal asks the Wal-Mart board of directors (the "Board"), acting through one of it committees, to exercise oversight over management's formulation and implementation of, and public reporting concerning, policies and standards to guide management's decision whether or not Wal-Mart should sell products falling in one or more of three categories: products that are 1) especially dangerous to the public, 2) pose a substantial risk to Wal-Mart's reputation and 3) would reasonably be considered offensive to the community and family values that Wal-Mart seeks to associate with its brand. Because these three classes of products all relate to matters of public interest, concern and debate, to Wal-Mart's good standing in the community, to the ethical conduct of its business and to a significant source of risk to customer retention and

---

[1] Pursuant to Rule 14a-8, Wal-Mart had to file a no-action request no later than 80 calendar days before it files its definitive proxy statement and form of proxy with the Securities and Exchange Commission (the "Commission"). Wal-Mart filed its no-action request on January 30, 2014, and the 80-day period expires on April 22, 2014. However, without a temporary restraining order that enjoins the printing of the 2014 Proxy Materials as well as their filing and distribution, Wal-Mart could place itself in a position where the reprinting of the 2014 Proxy Materials could entail great expense. As shown in the section of the accompanying Memorandum of Law that discusses irreparable harm, the inclusion of the Proposal only in a supplemental proxy statement would be highly prejudicial to Trinity Wall Street's chances to gain support for the Proposal.

attraction, Trinity Wall Street is acting reasonably when it asks the Board to adopt governance procedures with respect to these matters.

5. Wal-Mart has refused to include the Proposal in the 2014 Proxy Materials because it alleges that it falls within an exception specified in Rule 14a-8 to a shareholder's right to have a proposal included in the company's proxy materials. The exception on which Wal-Mart relies is found in Rule 14a-8(i)(7) and reads "***Management functions***: [the proposal may be excluded if] the proposal deals with a matter relating to the company's ordinary business operations."

6. Wal-Mart's position that the exception applies is contrary to the plain language of the Proposal. The Proposal deals with a matter relating to corporate governance and not to ordinary business operations. It is also inconsistent with the Commission's consistent interpretation of this provision to require inclusion of proposals dealing with important issues of corporate or social policy that transcend everyday business decisions that might be implicated. In issuing a no-action letter here, the staff of the Commission's Corporation Finance Division (the "Division") appears to have misunderstood Trinity Wall Street's position that this is a governance proposal or, if they did understand, ignored that position and the plain language of the Rule and the past interpretations of the Commission. Accordingly this Court should require that the Proposal be included in the 2014 Proxy Materials.

## JURISDICTION AND VENUE

7. The claim asserted herein arises under and pursuant to Section 14(a) of the 1934 Act, 15 U.S.C. § 78n, and Rule 14a-8, 17 C.F.R. § 240.14a-8, promulgated thereunder.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the 1934 Act, 15 U.S.C. § 78aa.

9. This Court has personal jurisdiction over Defendant as a publicly listed corporation organized and existing under the laws of Delaware.

3

10. Venue is proper in this District pursuant to Section 27 of the 1934 Act and 28 U.S.C. § 1391(b). As noted above, Wal-Mart is incorporated in this District.

11. In connection with the acts alleged in this complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the mails and interstate telephone communications.

## THE PARTIES

12. Trinity Wall Street is an Episcopal parish founded in 1697 offering daily worship services and faith formation programs at Trinity Church, St. Paul's Chapel, and online at trinitywallstreet.org. In addition, Trinity Wall Street includes Trinity Grants, which has provided $72 million in funding to 85 countries since 1972; St. Margaret's House, providing subsidized housing to the elderly and disabled; Trinity Preschool; Trinity Institute, an annual theological conference; an extensive arts program presenting more than 100 concerts each year through Concerts at One, the Trinity Choir, the Trinity Wall Street Choristers, and the Downtown Youth Chorus; Trinity Church Cemetery and Mausoleum, the only active cemetery in Manhattan; and Trinity Real Estate, which manages the parish's six million square feet of commercial real estate in lower Manhattan. Trinity Wall Street maintains its headquarters at 74 Trinity Place, New York, New York.

13. Wal-Mart is a publicly listed Delaware corporation and maintains its corporate headquarters at 702 SW 8th Street, Bentonville, Arkansas. Wal-Mart, the world's largest retailer, runs chains of large department and warehouse stores.

## BACKGROUND

### A. Requirements Governing Shareholder Proposals

14. In large, publicly held corporations, such as Wal-Mart, most shareholders rarely attend the company's annual meeting. Therefore, in order for the company to obtain a quorum of

4

shareholder votes sufficient to take actions necessary for it to conduct its business, including the consideration of proposals by its shareholders, the company must utilize proxies, by which a shareholder authorizes another person to vote his or her shares at the annual meeting.

15. To obtain votes by proxy, the company sends out proxy materials, including a proxy solicitation and a voting card that contains the company's proposals for shareholder vote, well in advance of the annual meeting.

16. Section 14(a) of the 1934 Act renders unlawful the solicitation of proxies in violation of the Commission's rules and regulations, codified at 17 C.F.R. § 240.14a-1 *et seq*.

17. Rule 14a-8, 17 C.F.R. § 240.14a-8 provides the procedures for submitting shareholder proposals, prescribes when a company must include a shareholder's proposal in the company's proxy statement, and lists the circumstances under which a shareholder proposal may be excluded by the company. *See* 17 C.F.R. § 240.14a-8(i).

18. Rule 14a-8(b)(1) requires, among other things, that to be eligible to submit a proposal, the shareholder "must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date [the shareholder] submit[ted] the proposal . . . [and] continue to hold those securities through the date of the meeting." 17 C.F.R. § 240.14a-8(b)(1). If a shareholder is not the registered holder of the securities, Rule 14a-8(b)(2) stipulates that such shareholder much prove its eligibility to the company. One way of so doing is "to submit to the company a written statement from the 'record' holder of [the] securities (usually a broker or bank) verifying that, at the time [the shareholder] submitted [the] proposal, [such shareholder] continuously held the securities for at least one year. 17 C.F.R. § 240.14a-8(b)(2)(i). The shareholder "must also include . . . [a] written statement that [it] intend[s] to continue to hold the securities through the

date of the meeting of shareholders." *Id.* Procedurally, the rule requires that shareholder proposals be limited to 500 words (17 C.F.R. § 240.14a-8(d)), and must be submitted to the company no later than 120 days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting. *See* 17 C.F.R. § 240.14a-8(e)(2).

19. If a shareholder satisfies the eligibility and procedural requirements, Rule 14a-8 permits the company to exclude the offered shareholder proposal only if it meets its burden of establishing that the shareholder proposal falls within thirteen specifically enumerated exclusions. If the company fails to meet its burden, assuming the shareholder is eligible and has met the procedural requirements for Rule 14a-8, the company must include the proposal with its proxy materials.

  **B.** **Trinity Wall Street's Shareholder Proposal**

20. On December 18, 2013, Trinity Wall Street notified Wal-Mart that Trinity Wall Street was submitting a shareholder proposal and that Trinity Wall Street intended to present the proposal at Wal-Mart's 2014 Annual Shareholders' Meeting (the "Annual Meeting").

21. The Proposal sought to ensure appropriate and transparent oversight by the Board of the sale by Wal-Mart of products that especially endanger public safety and well-being, risk impairing Wal-Mart's reputation, or offend the family and community values integral to Wal-Mart's brand.

22. Responsibility for such considerations is delegated by the Wal-Mart Board to its Compensation, Nominating and Governance Committee, which is charged with, among other things, "[r]eview[ing] the Company's reputation with external constituencies and recommend[ing] to the Board any proposed changes to the Company's policies, procedures, and programs as a result of such review."

23. The Proposal set forth the following amendment to the Compensation, Nominating and Governance Committee charter:

**RESOLVED:**

Stockholders request that the Board amend the Compensation, Nominating and Governance Committee charter (or add an equivalent provision to another Board committee charter) as follows:

27. Providing oversight concerning the formulation and implementation of, and the public reporting of the formulation and implementation of, policies and standards that determine whether or not the Company should sell a product that:
1) especially endangers public safety and well-being;
2) has the substantial potential to impair the reputation of the Company; and/or
3) would reasonably be considered by many offensive to the family and community values integral to the Company's promotion of its brand.

24. The Proposal provided that it was intended to cover policies and standards that would be applicable to determining whether or not Wal-Mart should sell guns equipped with magazines holding more than ten rounds of ammunition ("high capacity magazines") and to balancing the benefits of selling such guns against the risks that these sales pose to the public and to Wal-Mart's reputation and brand value.

25. The Supporting Statement to the Proposal provided that it sought to:

> ensure appropriate and transparent Board oversight of the sale by the company of products that especially endanger public safety and well-being, risk impairing the company's reputation, or offend the family and community values integral to the company's brand.
>
> The company respects family and community interests by choosing not to sell certain products such as music that depicts violence or sex and high capacity magazines separately from a gun, but lacks policies and standards to ensure transparent and consistent merchandizing decisions across product categories. This results in the company's sale of products, such as guns equipped with high capacity magazines, that facilitate mass killings, even as it prohibits sales of passive products such as music that merely depict such violent rampages.

7

> The example of guns equipped with high capacity magazines, which are on sale at the company's stores, is instructive in other ways. There is a substantial question regarding whether these guns are well suited to hunting or shooting sports; it is beyond doubt that they are well suited to mass killing, and tragically more effective for the latter purpose, than are the handguns equipped to fire ten or fewer rounds that the company chooses not to sell except in Alaska. The former reduce opportunities for people to flee or overwhelm a shooter during reloading and have enabled many mass killings, including those at Newtown, Oak Creek, Aurora, Tucson, Fort Hood, Virginia Tech and Columbine.
>
> While guns equipped with high capacity magazines are just one example of a product whose sale poses significant risks to the public and to the company's reputation and brand, their sale illustrates a lack of reasonable consistency that this proposal seeks to address through Board-level oversight. This responsibility seems appropriate for the Compensation, Nominating and Governance Committee, which is charged with related responsibilities.

26. In submitting the Proposal, Trinity Wall Street established its eligibility and compliance with the procedural requirements of Rule 14a-8.

27. First, the Proposal was submitted on December 18, 2013, which was no later than 120 calendar days before Wal-Mart intended to file its 2014 Proxy Materials and the Proposal was less than 500 words in length.

28. Second, at the time the Proposal was filed, Trinity Wall Street had been the beneficial owner of at least $2,000 worth of the shares of Wal-Mart.

29. Third, at the time the Proposal was filed, Trinity Wall Street had beneficially owned these shares continuously for more than one year prior to December 18, 2013 and represented its intent to hold those shares through the date of the Annual Meeting.

30. Fourth, at the time the Proposal was filed, Trinity Wall Street provided to Wal-Mart a proof of ownership letter dated December 18, 2013 from The Bank of New York Mellon, a Depository Trust Company participant and the custodian and holder of record of Trinity Wall

Street's shares of Wal-Mart stock, certifying that Trinity Wall Street was, as of December 18, 2013, the beneficial owner of at least $2,000 worth of the shares of Wal-Mart stock and had beneficially owned these shares continuously for more than one year prior to December 18, 2013.

      **C.**     **Wal-Mart's Rejection of the Proposal and the Division's No-Action Letter**

      31.     On January 30, 2014, Wal-Mart invoked the Division's "no-action" process by letter to the Division.

      32.     In its letter to the Division, Wal-Mart stated its intention to omit the Proposal and its supporting statement from the 2014 Proxy Materials. Wal-Mart stated that it could exclude the Proposal from the 2014 Proxy Materials pursuant to Rule 14a-8(i)(7) because the Proposal deals with matters relating to Wal-Mart's ordinary business operations.

      33.     On February 4, 2014, Trinity Wall Street responded to the no-action request. In its response, Trinity Wall Street explained that the Proposal does not deal with ordinary business operations because, among other reasons: (i) the Proposal addresses the Defendant's corporate governance through Board oversight of important merchandizing policies and is substantially removed from particularized decision-making in the ordinary course of business; (ii) the Proposal concerns the Defendant's standards for avoiding community harm while fostering public safety and corporate ethics and does not relate to any individual product; (iii) the Proposal raises substantial issues of both corporate governance and public policy, namely a concern for the safety and welfare of the communities served by the Defendant's stores; and (iv) the corporate policy addressed by the Proposal is not invalidated on the basis that the Defendant is a retailer.

      34.     On March 20, 2014, a staff attorney of the Division issued a no-action letter, informing Wal-Mart that there appeared "to be some basis" for its view that it could exclude the

Case 1:14-cv-00405-LPS Document 4 Filed 04/01/14 Page 10 of 13 PageID #: 125

Proposal under Rule 14a-8(i)(7), as relating to Wal-Mart's "ordinary business operations."[2] The Division staff stated that the Proposal related to "products and services offered for sale" by Wal-Mart, which the Division staff said were "generally excludable under Rule 14a-8(i)(7)." As a result, the Division stated it would not recommend enforcement action if Wal-Mart omitted the Proposal from its 2014 Proxy Materials.

35. The Division's conclusion that there was "some basis" for Wal-Mart's view that the Proposal could properly be omitted pursuant to Rule 14a-8(i)(7) is wrong for multiple reasons, including, but not limited to: (i) the Proposal is a corporate governance proposal; and (ii) the Proposal addresses significant issues of public and corporate policy and ethical business policies that transcend ordinary business operations.

36. Moreover, the Division has been inconsistent in its application of Rule 14a-8(i)(7) in that its conclusion is not consonant with its previous interpretations of this Rule.

37. On knowledge and belief, Wal-Mart continues to hold the position that it will omit the Proposal from the 2014 Proxy Materials.

38. On knowledge and belief, Wal-Mart will transmit the 2014 Proxy Materials to shareholders on or about April 22, 2014.

39. Trinity Wall Street, and other shareholders of the Defendant, will be irreparably harmed if the 2014 Proxy Materials are filed without the inclusion of the Proposal. The shareholders' right to inclusion of the Proposal under Rule 14a-8 will become impossible to rectify once the incomplete proxy materials are sent.

---

[2] Rule 14a-8(i)(7) is one of the thirteen enumerated grounds upon which a company may rely to exclude a shareholder proposal from the company's proxy.

## CLAIM

## VIOLATION OF SECTION 14(a) AND RULE 14a-8

40. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

41. Plaintiff has a right of action against Wal-Mart to enforce Section 14(a) of the 1934 Act and Rule 14a-8.

42. On or about December 18, 2013, Plaintiff notified Wal-Mart that it was submitting a proposal that Plaintiff intended to present at the Annual Meeting and requested that the Proposal be included in the 2014 Proxy Materials which are to be mailed to the Company's shareholders on or about April 22, 2014, as required by Rule 14a-8, 17 C.F.R. § 240.14a-8. The Proposal sought to amend the Compensation, Nominating and Governance Committee charter so as to ensure appropriate and transparent oversight by the Board of the sale by Wal-Mart of products that especially endanger public safety and well-being, risk impairing Wal-Mart's reputation, or offend the family and community values integral to Wal-Mart's brand.

43. As of December 18, 2013, Plaintiff was the beneficial owner of at least $2,000 worth of the shares of Wal-Mart, which it had owned continuously for more than one year prior to December 18, 2013 and intended to hold those shares through the date of the Annual Meeting. Accordingly, the Proposal in all respects satisfied the procedural requirements established by Rule 14a-8, 17 C.F.R. § 240.14a-8 to be included in the 2014 Proxy Materials.

44. On or about January 30, 2014, Wal-Mart informed Plaintiff that it did not intend to include the Proposal in the 2014 Proxy Materials and sought no-action relief from the Division with respect to its decision to omit the Proposal.

45. On March 20, 2014, the Division issued a no-action letter stating that "there appears to be some basis" for Wal-Mart's view that the Proposal may be excluded under Rule

14a-8(i)(7). This determination is erroneous, inconsistent with the Division's prior interpretations of Rule 14a-8(i)(7) and is not binding on the Court or the parties. Nevertheless, on information and belief, Wal-Mart continues to intend to exclude the Proposal from the 2014 Proxy Materials.

46. Wal-Mart's stated decision to omit the Proposal from the 2014 Proxy Materials violates Section 14(a) of the 1934 Act and Rule 14a-8.

47. On information and belief, Wal-Mart will send the 2014 Proxy Materials to shareholders on or about April 22, 2014.

48. Plaintiff has no adequate remedy at law and faces imminent and irreparable loss of its rights as a result of Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter a judgment providing the following relief:

A. Declaratory judgment that Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials violates Section 14(a) of the 1934 Act and Rule 14a-8, 17 C.F.R. § 240.14a-8;

*[The Remainder of this Page was Intentionally Left Blank]*

B.    Injunctive relief compelling Wal-Mart to include the Proposal in the 2014 Proxy Materials;

C.    An order awarding Plaintiff its costs of litigation, including reasonable attorneys' fees, pursuant to the common benefit doctrine; and

D.    Any other relief as the Court deems just and proper.

/s/ Joel Friedlander
Joel Friedlander (Bar No. 3163)
Jeffrey M. Gorris (Bar No. 5012)
Jaclyn Levy (Bar No. 5631)
BOUCHARD MARGULES &
FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
jfriedlander@bmf-law.com
jgorris@bmf-law.com
jlevy@bmf-law.com

*Counsel for the Plaintiff, Trinity Wall Street*

Dated: April 1, 2014