IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRINITY WALL STREET,

                    Plaintiff,

     v.                                          C.A. No. 14-405-LPS

WAL-MART STORES, INC.,

                    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST WAL-MART STORES, INC.

Joel Friedlander (Bar No. 3163)
Christopher M. Foulds (Bar No. 5169)
Jaclyn Levy (Bar No. 5631)
FRIEDLANDER & GORRIS, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500

*Attorney for the Plaintiff Trinity Wall Street*

Dated:  June 18, 2014

## TABLE OF CONTENTS

Pages

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT .................................................................................................. 2

STATEMENT OF THE FACTS ............................................................................................... 4

I.      WAL-MART AND ITS SHAREHOLDER TRINITY WALL STREET. ......................... 4

II      TRINITY WALL STREET TRIES TO EXERCISE ITS SHAREHOLDER
        RIGHTS ................................................................................................................. 5

III.    TRINITY WALL STREET COMMENCES ACTION AND SEEKS A
        PRELIMINARY INJUNCTION ................................................................................ 7

IV.     TRINITY WALL STREET FILES ITS AMENDED COMPLAINT ............................... 7

ARGUMENT .......................................................................................................................... 7

I.      THE PROPOSAL SATISFIES RULE 14a-8 AND FURTHERS BOTH ITS
        PURPOSE AND THE PRINCIPLES UNDERLYING SECTION 14(A) ....................... 8

        A.     WAL-MART CANNOT MEET ITS BURDEN
               THAT THE PROPOSAL FALLS WITHIN AN EXCEPTION
               UNDER RULE 14a-8(i) ................................................................................ 10

               1) CONTOURS OF THE ORDINARY BUSINESS EXCEPTION ....... 10

               2) THE PROPOSAL ADDRESSES ISSUES OF CORPORATE
               GOVERNANCE AND POLICY AND THUS FALLS OUTSIDE
               THE ORDINARY BUSINESS EXCEPTION ...................................... 13

               3) THE PROPOSAL TRANSCENDS ORDINARY BUSINESS
               OPERATIONS ................................................................................... 15

II.     THE DIVISION'S NO-ACTION LETTER IS UNPERSUASIVE AND SHOULD
        BE GIVEN NO DEFERENCE  ................................................................................ 17

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

8 Del. C. § 141(a) .................................................................................................13

15 U.S.C. § 78n ...................................................................................................... 8

17 C.F.R. § 240.14a-8 ................................................................................... passim

17 C.F.R. § 240.14a-8(a)-(m) .................................................................................9

17 C.F.R. § 240.14a-8(i)(7) ............................................................................2, 10

Fed. R. Civ. P. 56(a) ...............................................................................................8

## Cases

*Am. Fed'n of State, Ctny. & Mun. Emps. v. Am. Int'l Grp., Inc.*,
462 F.3d 121 (2d Cir. 2006)..............................................................................9, 19

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
821 F. Supp. 877 (S.D.N.Y. 1993) *aff'd*, 54 F.3d 69 (2d Cir. 1995) .................. 9, 17, 19

*Apache Corp. v. NYC Emps. Ret. Sys.*,
621 F. Supp. 2d 444 (S.D. Tex. 2008) ...........................................................16, 19

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council Inc.*,
467 U.S. 837 (1984)................................................................................................3

*Gould v. Am. Hawaiian S.S. Co.*,
319 F. Supp. 795 (D. Del. 1970)............................................................................8

*Grimes v. Centerior Energy Corp.*,
909 F.2d 529 (D.C. Cir. 1990).....................................................................10-11, 12

*Grimes v. Donald*,
No. Civ. A. 13358, 1995 WL 54441 (Del. Ch. Jan. 11, 1995) *aff'd*, 673 A.2d 1207 (Del.
1996) ......................................................................................................................13

*Ivanhoe Partners v. Newmont Min. Corp.*,
535 A.2d 1334 (Del. 1987) ...................................................................................13

*Kaucher v. Cnty. of Bucks*,
455 F.3d 418 (3d Cir. 2006)....................................................................................8

*Levy v. Sterling Holding Co., LLC,*
314 F.3d 106 (3d Cir. 2002)...................................................................................18

*Macfarlan v. Ivy Hill SNF, LLC,*
675 F.3d 266 (3d Cir. 2012)....................................................................................8

*Med Comm. for Human. Rights v. SEC,*
432 F.2d 659 (D.C. Cir. 1970) ................................................................... 8, 10, 17

*Morales v. Quintel Entm't,*
249 F.3d 115 (2d Cir. 2001)...................................................................................18

*New York City Emps. Ret. Sys. v. Dole,*
795 F. Supp. (S.D.N.Y 1992).................................................................................15

*Register v. PNC Fin. Servs. Grp. Inc.,*
477 F.3d 56 (3d Cir. 2007).....................................................................................11

*Roosevelt v. E.I. DuPont de Nemours & Co.,*
958 F.2d 416, 421 (2d Cir. 1992)........................................................................9, 18

**SEC No-Action Letters**

*Citigroup Inc.,* SEC No-Action Letter,
2008 WL 524150 (Feb. 21, 2008)..........................................................................20

*Citigroup Inc.,* SEC No-Action Letter,
2012 WL 6723109 (Feb. 15, 2013).........................................................................19

*Corrections Corp. of Am.,* SEC No-Action Letter,
2011 WL 6837534 (Feb. 10, 2012).........................................................................19

*Denny's Corp.,* SEC No-Action Letter,
2009 WL 772857 (Mar. 17, 2009) .........................................................................20

*Motorola, Inc.,* SEC No-Action Letter,
2002 WL 480349 (Mar. 8, 2002) ...................................................................... 19-20

*Newmont Mining Corp.,* SEC No-Action Letter,
2007 WL 403867 (Feb. 5, 2007).............................................................................20

*Wyeth,* SEC No-Action Letter,
2005 WL 326905 (Feb. 8, 2005) ............................................................................20

*Verizon Commc'ns. Inc.,* SEC No-Action Letter,
2010 WL 5409427 (Feb. 15, 2009) ........................................................................20

## Other Authorities

*Adoption of Amendments Relating to Proposals by Security Holders,*
41 Fed. Reg. 52,994 (Dec. 3, 1976) ................................................................................11

*Amendments to Clauses on Shareholder Proposals,*
Exchange Act Release No. 324-40018, 67 S.E.C. Docket 373, 1998 WL 254809
(May 21, 1998).......................................................................................................passim

*Global Responsibility*, Wal-Mart Corporate Webpage, *available at* http:
//corporate.walmart.com/global-responsibility (last visited June 09, 2014)....................4

*Proposed Amendments to Rule 14a–8,*
Exchange Act Release No. 19,135, 47 Fed. Reg. 47,420, 47,420–21 (Oct. 26, 1982)....................9

S. Rep. No. 73-792 (1934) ................................................................................................8

SEC Division of Corporation Finance, *Informal Procedures Regarding Shareholder
Proposals*, SEC, *available at* http: //www.sec.gov/divisions/corpfin/cf-noaction/14a-8-
informal-procedures.htm (last modified Nov. 2, 2011) .................................................18

Staff Legal Bulletin No. 14C (CF) (June 28, 2005).......................................................12

Staff Legal Bulletin No. 14E (CF), 2009 WL 4363205 (Oct. 27, 2009) .................12, 16

*Statement of Informal Procedures for the Rendering of Staff Advice with Respect to
Shareholder Proposals*, Exchange Act Release No. 9344, 95 S.E.C. Docket 1040
(July 7, 1976) ..........................................................................................................17, 18

Wal-Mart, *Wal-Mart's 2014 Global Responsibility Report* (2014), http:
//cdn.corporate.walmart.com/db/e1/b551a9db42fd99ea24141f76065f/2014-global-
responsibility-report.pdf..................................................................................................4

Trinity Wall Street, whose full legal name is The Rector, Church-Wardens, and Vestrymen of Trinity Church, in the City of New York ("Trinity Wall Street" or "Trinity"), respectfully submits this memorandum of law (the "Memorandum of Law") in support of its motion (the "Motion") for summary judgment on three issues: *first,* declaring that defendant Wal-Mart Stores, Inc.'s ("Wal-Mart," "Defendant" or the "Company") exclusion of the shareholder proposal that Trinity Wall Street submitted to Wal-Mart (the "Proposal") for inclusion in the proxy materials for Wal-Mart's 2014 Annual Shareholders' Meeting (the "2014 Proxy Materials") violated Section 14(a) of the Securities and Exchange Act of 1934 (the "1934 Act") and Rule 14a-8, 17 C.F.R. § 240.14a-8; *second,* declaring that Wal-Mart's reasonably anticipated exclusion of the Proposal from its proxy materials (the "2015 Proxy Materials") for Wal-Mart's 2015 Annual Shareholders' Meeting (the "2015 Meeting") will violate Section 14(a) of the 1934 Act and Rule 14a-8; and *third,* granting injunctive relief enjoining Wal-Mart from relying on Rule 14a-8(i)(7) to exclude the Proposal from its 2015 Proxy Materials.

## NATURE AND STAGE OF PROCEEDINGS

Trinity filed its Verified Complaint (the "Complaint") and a Motion for a Preliminary Injunction and Temporary Restraining Order on April 1, 2014. (D.I. 1, 4). The parties subsequently submitted additional letter briefs on an expedited schedule. (D.I. 11, 13). On April 11, 2014, the Court heard argument on, and ultimately denied, Trinity's motion. (D.I. 18). On May 6, 2014, Wal-Mart filed a motion to dismiss the Complaint. (D.I. 26-28). In response, Plaintiff filed an Amended Verified Complaint (the "Amended Complaint") on May 19, 2014. (D.I. 32). On June 5, 2014, Wal-Mart moved to dismiss the Amended Complaint on the grounds of mootness and ripeness. (D.I. 33). Trinity will respond to these contentions in its response to that motion. Trinity now moves for summary judgment on its Amended Complaint.

## SUMMARY OF ARGUMENT

1.     Trinity Wall Street brought this action for a declaratory judgment and injunctive relief to vindicate its federal right as a shareholder of Wal-Mart to require Wal-Mart to include the Proposal in its 2014 Proxy Materials.  As the Amended Complaint in this action makes clear, Trinity Wall Street will again advance the Proposal for inclusion in the 2015 Proxy Materials if its right to do so is not rejected.

2.     The Proposal is founded on Trinity's belief that good corporate governance requires board oversight of merchandizing policies (or the lack thereof) that substantially implicate community safety and/or the reputation or brand integrity of the Company.  It is also founded on the belief that good governance in this respect is in the business interest of the Company as well as in its ethical interest of good corporate citizenship.[1]  *See* Declaration of the Rev. Dr. James H. Cooper filed herewith (the "Cooper Decl.") at 3.

3.     Wal-Mart's sole argument for its right to exclude the Proposal is that it falls within what is commonly called the "ordinary business exception" found in subdivision (i)(7) of Rule 14a-8 which reads:  "**Management Functions**:  [the proposal may be excluded if] the proposal deals with a matter relating to the company's ordinary business operations."  17 C.F.R. § 240.14a-8(i)(7).

4.     The Proposal falls outside of the accepted meaning of this exception.  *First*, the Securities and Exchange Commission (the "Commission") has identified the purposes of the exception, which are to prevent shareholder micro-management of the company and to avoid shareholder interference with the "fundamental" ability of management to run the company on a

---

[1] The Proposal was motivated in part by the Newtown tragedy and by Trinity's desire, as a matter of good governance and corporate citizenship, to see Wal-Mart focus business risk oversight over its sale of products with special community and/or business risks, including guns equipped with high capacity magazines. *See* Cooper Decl.

day-to-day basis. As explained below, the Proposal does neither of these things; and this itself is sufficient to obviate the exception's application. ***Second***, because it is a governance proposal touching on both matters of public concern and significant corporate risk, the Proposal, in the terminology used by the Commission, "transcends" any impact on ordinary business decisions and thus falls outside of the scope of the exception.

5.      Accordingly, Wal-Mart cannot prevail based on the letter from staff of the Corporate Finance Division (the "Division") of the Commission that it would not recommend an enforcement action against Wal-Mart if Wal-Mart omitted the Proposal. This staff advice, which is commonly called no-action relief, is not agency action, and it is well established that it deserves no *Chevron* deference.[2]  Moreover, it is not persuasive because it offers no analysis and is not consistent with prior Commission statements or with other non-binding staff advice.

6.      Trinity, moreover, has established that the exclusion of the Proposal from the 2014 Proxy Materials caused it irreparable injury and if excluded again, as is likely, will cause it further irreparable injury. There is no merit to Wal-Mart's suggestion that this injury was of Trinity's own making. Wal-Mart argues that Trinity could have incurred the substantial expense of printing its own proxy statement and proxy cards and distributing that statement to Wal-Mart's many shareholders. The federal right that Rule 14a-8 confers on Trinity is intended to allow shareholders to avoid this expense and the alternative of raising a proposal at a shareholder meeting without giving absent shareholders a say in a matter. Rule 14a-8 confers a right whose deprivation must be considered irreparable if the purposes for which this right exists are to be achieved.

---

[2] In *Chevron, U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837, 844 (1984), the Supreme Court held that courts typically should defer to binding and final decisions by agencies concerning the interpretation of the statutes and rules they administer.

## STATEMENT OF THE FACTS

**I.    Wal-Mart And Its Shareholder Trinity Wall Street**

Wal-Mart, the world's largest retailer, is a publicly listed corporation organized under the

laws of the State of Delaware whose stated corporate ethic is both to help people "save money"

and to "live better." Wal-Mart recognizes that due to its size and mission, it has "an opportunity

and a responsibility to make a difference on the big issues that matter to us all." *Global*

*Responsibility*, Wal-Mart Corporate Webpage, *available at* http:

//corporate.walmart.com/global-responsibility/ (last visited June 09, 2014). Thus, Wal-Mart

associates its brand with public betterment, ethical behavior and good citizenship.

As part of its governance effort in relation to these goals, the board of Directors (the

"Board") of Wal-Mart has given certain oversight responsibility to its Compensation,

Nominating and Governance Committee (the "Committee"), whose general purpose includes

assisting "the Board in the implementation of sound corporate governance principles and

practices." *See* Decl. of Stacy Brandom filed herewith ("Brandom Decl."), Ex. A.  The

Committee is currently charged with "review[ing] the Company's reputation with external

constituencies and recommend[ing] to the Board any proposed changes to the Company's

policies, procedures, and programs as a result of such review." *Id.* As set forth in Wal-Mart's

2014 Global Responsibility Report, the Board sees this oversight as having strategic importance

to Wal-Mart as a whole:  "Consistent with our commitment to sustainability, charitable giving,

and leading on social issues important to our customers and shareholders, and with our

responsibility as a global corporation, our board has assigned oversight of these areas to the

Compensation, Nominating and Governance Committee." Wal-Mart, *2014 Global*

*Responsibility Report* at 16 (2014), http: //cdn.corporate.walmart.com/db/e1/b551a9db42fd99

ea24141f76065f/2014-global-responsibility-report.pdf.  The report also lists the Company's

values, which include "integrity, opportunity, family and community, purpose and responsibility." *Id.*

Trinity Wall Street is an Episcopal parish located at Broadway and Wall Street in New York City. Trinity shares Wal-Mart's goals of making a difference and is engaged in numerous charitable works. Trinity is a shareholder of Wal-Mart and has held at least $2,000 worth of shares of Wal-Mart stock continuously for more than one year prior to December 18, 2013, Brandom Decl., Ex. B, and will continue to do so through the 2015 Meeting. Cooper Decl. at 3.

## II.    Trinity Wall Street Tries To Exercise Its Shareholder Rights

Wal-Mart's approach to dangerous products or products that pose significant risks to its reputation has been strikingly inconsistent. For example, Wal-Mart does not sell handguns other than in Alaska, does not sell magazines holding more than ten rounds of ammunition ("high capacity magazines") as a separate accessory and has removed from its website certain weapons and high capacity magazines. However, Wal-Mart continues to sell in its stores assault-type rifles equipped with high capacity magazines. (Amended Compl. at 8. (D.I. 32)).

Wal-Mart has not provided any written policy to guide decisions whether or not to sell products that especially endanger public safety and well-being, have the substantial potential to impair the reputation of Wal-Mart, or would reasonably be considered by many offensive to the family and community values integral to Wal-Mart's promotion of its brand. Nor does Wal-Mart appear to have any policies regarding Board oversight of the formulation or implementation of such policies. Cooper Decl. at 2.

The Proposal reads in part as follows:

RESOLVED:

Stockholders request that the Board amend the Compensation, Nominating and Governance Committee charter (or add an equivalent provision to another Board committee charter) as follows:

"27. Providing oversight concerning the formulation and implementation

5

of, and the public reporting of the formulation and implementation of, policies and standards that determine whether or not the Company should sell a product that:

1) especially endangers public safety and well-being;

2) has the substantial potential to impair the reputation of the Company; and/or

3) would reasonably be considered by many offensive to the family and community values integral to the Company's promotion of its brand."

On January 30, 2014, Wal-Mart wrote to the Division and stated its intention to omit the Proposal from the 2014 Proxy Materials (the "No-Action Request") on the grounds that the Proposal deals with matters relating to Wal-Mart's ordinary business operations. Brandom Decl., Ex. C. Specifically, Wal-Mart argued that: (1) the Proposal concerned Wal-Mart's ordinary business operations because the proposal involves decisions related to the products offered for sale by Wal-Mart; (2) the Proposal was overbroad and not limited to the sale of assault rifles, and as a result, did not implicate a significant policy issue; and (3) the Proposal involved Wal-Mart's activities as a retailer—as opposed to as a manufacturer—of the firearms and related products referenced by the Proposal. *Id.*

On February 4, 2014, Trinity responded to the No-Action Request by explaining that the Proposal was proper in all respects under Rule 14a-8 and therefore Wal-Mart was required to include it in the 2014 Proxy Materials. Brandom Decl., Ex. D (the "No-Action Reply").

On March 20, 2014, the Division issued a no-action letter (the "No-Action Letter"), informing Wal-Mart that there appeared to be "some basis" for its view that it could exclude the Proposal under Rule 14a-8(i)(7). Brandom Decl., Ex. E. With no analysis, the Division stated in a conclusory manner that the Proposal related to "products and services offered for sale" by Wal-Mart, noting that "[p]roposals concerning the sale of particular products and services" are "generally excludable under rule 14a-8(i)(7)." *Id.* As a result, the Division would not recommend enforcement action if Wal-Mart omitted the Proposal from its 2014 Proxy Materials

in reliance on Rule 14a-8(i)(7).  *Id.*  There was no discussion of the corporate governance and community safety nature of the Proposal and whether that nature caused the Proposal to transcend any ordinary business characterization.

## III.   Trinity Wall Street Commences Action And Seeks A Preliminary Injunction

On April 1, 2014, Trinity commenced this action.  In its initial Complaint, Trinity sought a declaratory judgment that Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials violated Section 14(a) of the 1934 Act and Rule 14a-8, and sought injunctive relief compelling Wal-Mart to include the Proposal in the 2014 Proxy Materials.  Due to the short, 34-day period between the issuance of the No-Action Letter on March 20, 2014 and the mailing of the 2014 Proxy Materials on April 23, 2014, Trinity also moved on April 1 for a temporary restraining order and preliminary injunctive relief.

The Court held oral argument on Trinity's motion on April 11, 2014.  The Court determined that Trinity had not shown a likelihood of success on the merits needed to obtain the extraordinary relief of a temporary restraining order and preliminary injunction.  Apr. 11, 2014 Hr'g Tr. at 42-45.  In reaching this conclusion, the Court emphasized the time constraints under which it was required to resolve the motion and observed that "if the case proceeds, I'll at least have more time to reflect further on the argument."  *Id.* at 45.

## IV.   Trinity Wall Street Files Its Amended Complaint

Wal-Mart filed and distributed its 2014 Proxy Materials on or about April 23, 2014 without including the Proposal.  On May 16, 2014, Trinity filed its Amended Complaint, which seeks the declaratory and injunctive relief identified above.  Trinity now moves for summary judgment.

## ARGUMENT

A court must grant "summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *accord Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012). "An

issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could

find for the non-moving party, and a factual dispute is material only if it might affect the

outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d

Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Wal-Mart cannot

meet this burden, and as set forth below, Trinity is entitled as a matter of law to have the

Proposal included in Wal-Mart's proxy materials.

## I.   The Proposal Satisfies Rule 14a-8 And Furthers Both Its Purpose And The Principles Underlying Section 14(a)

The underlying purpose of Rule 14a-8 is to empower shareholders to inform other

shareholders of business that they seek to bring before the annual meeting and in a cost-effective

manner allow other shareholders to express their views. It contemplates the promotion of

shareholder democracy with regard to matters of import. The Proposal—which, as explained

below, concerns ameliorating failures of corporate governance—is consistent with the principles

that lie at the heart of Rule 14a-8.

Section 14(a) of the 1934 Act empowers the Commission to regulate the solicitation of

proxies, not for the benefit of management, but rather for the purpose of "the public interest or

for the protection of investors." 15 U.S.C. § 78n. "Congress intended by its enactment of

section 14 . . . to give true vitality to the concept of corporate democracy." *Med. Comm. for

Human. Rights v. SEC*, 432 F.2d 659, 676 (D.C. Cir. 1970). The section "stemmed from the

congressional belief that 'fair corporate suffrage is an important right that should attach to every

equity security bought on a public exchange.'" *Gould v. Am. Haw. S.S. Co.*, 319 F. Supp. 795,

810 (D. Del. 1970) (quoting H.R. Rep. No. 1383, 73d Cong., 2d Sess., 13). Such concerns go

beyond financial concerns to broader questions of policy. S. Rep. No. 73-792 at 12 (1934) ("[I]t

is essential that [stockholders] be enlightened not only as to the financial condition of the corporation, but also as to the major questions of policy").

Time and again, the Commission has recognized the importance of the proxy solicitation process and Rule 14a-8 as the primary forum for shareholder suffrage and communication among shareholders and with management. Proposed Amendments to Rule 14a-8, Exchange Act Release No. 19,135, 47 Fed. Reg. 47,420, 47,420–21 (Oct. 26, 1982) (recognizing that since proxy solicitation process had become the forum for shareholder suffrage, the SEC has provided security holders "a right to have their proposals presented to the issuer's security holders at large and to have proxies with respect to such proposals solicited at little or no expense to the security holder"). The Rule provides shareholders "[a]ccess to management proxy solicitations to sound out management views and to communicate with other shareholders on matters of major import." *Roosevelt v. E.I. DuPont de Nemours & Co.*, 958 F.2d 416, 421 (2d Cir. 1992).

Rule 14a-8 provides for such communication in a relatively simple structure: if a shareholder and its proposal satisfy each of the criteria in the Rule, then the company *must* include the proposal unless the proposal falls under one of thirteen narrow exceptions expressly enumerated in the Rule. *See* 17 C.F.R. § 240.14a-8(a)-(m). The company bears the burden of establishing that an exception applies. *See Am. Fed'n of State, County & Mun. Emps. v. Am. Int'l Grp., Inc.*, 462 F.3d 121, 125 (2d Cir. 2006); *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 883 (S.D.N.Y. 1993) *aff'd*, 54 F.3d 69 (2d Cir. 1995) (same). This burden is heavier than the inappropriate "some basis" to exclude standard used by the Division here. Brandom Decl., Ex. E.

Rule 14a-8 is intended to facilitate shareholder dialogue—not limit access to the proxy only to those proposals that the Commission or management view as meritorious. Ultimately, it is for the shareholders to determine whether a proposal is meritorious, especially when such

9

proposal is designed to check the failures of management.  Rule 14a-8 thus broadly favors

shareholder proposals by encouraging participation in corporate governance.  *See Med. Comm.*,

432 F.2d at 680-81 ("[S]ection 14(a)['s] overriding purpose is to assure to corporate shareholders

the ability to exercise their right - some would say their duty - to influence the important

decisions which affect them in their capacity as stockholders and owners of the corporation.").

The Proposal speaks specifically to this purpose – facilitating a dialogue among shareholders

regarding the Board's perceived failure to adequately oversee Wal-Mart's policies on

merchandising.

### A.    Wal-Mart Cannot Meet Its Burden That the Proposal Falls Within An Exception Under Rule 14a-8(i)

The sole exception on which Wal-Mart has opposed the Proposal is contained in Rule

14a-8(i)(7), which reads:  "**Management Functions**:  [the proposal may be excluded if] the

proposal deals with a matter relating to the company's ordinary business operations."  17 C.F.R.

§ 240.14a-8(i)(7).  Under the plain language of that exception (and the meaning given to it by

courts, the Commission, and the Division), the Proposal does not concern Wal-Mart's "ordinary

business operations," but rather corporate governance and oversight over significant policy

matters.  Wal-Mart thus has not met its burden under the Rule.

### 1)    Contours Of The Ordinary Business Exception

The term "management function," like the phrase "ordinary business operations," does

not have a "precise definition,"[3] but as the D.C. Circuit has explained, "only those proposals

involving 'business matters that are mundane in nature and do not involve any substantial policy'

considerations may be omitted under exemption 7."  *Grimes v. Centerior Energy Corp.*, 909 F.2d

---

[3] *See also* Amendments to Clauses on Shareholder Proposals, Exchange Act Release No. 324-40018, 67 S.E.C. Docket 373, 1998 WL 254809, at *4 (May 21,1998) ("1998 Release") ("there is no bright-line test to determine when employment-related shareholder proposals raising social issues fall within the scope of the 'ordinary business' exclusion").

529, 531-32 (D.C. Cir. 1990) (citing Adoption of Amendments Relating to Proposals by Security

Holders, 41 Fed. Reg. 52,994, 52998 (Dec. 3, 1976) ("1976 Amendments")). This interpretation

is consistent with the language of the Rule itself, which must be consulted first when

interpreting any regulation. *Register v. PNC Fin. Servs. Grp. Inc.*, 477 F.3d 56, 67 (3d Cir.

2007). "Management functions" and "ordinary business" mean precisely what they say: the

day-to-day function of a company carried out by management. In contrast, proposals—like the

one at issue here—that concern corporate governance and board oversight over significant policy

issues fall squarely outside the exception's terms.

The Commission's interpretation of Rule 14a-8(i)(7) accords with this reading. In 1998,

the Division explained that the ordinary business exception rests on two considerations. First,

proposals whose subject matter are "so fundamental to management's ability to run a company

on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder

oversight," may fall within the exclusion. 1998 Release at *4. Examples include the hiring and

firing of employees or decisions regarding the quantity of production. *Id.* However, even if a

proposal relates to such matters, a company nonetheless may not exclude the proposal if it

"focus[es] on sufficiently significant social policy issues . . . , because the proposal[] would

transcend the day-to-day business matters," and thus be the proper subject of shareholder

vote. *Id.* (reversing exclusion of employment-related proposals involving social issues because

they have engendered "widespread public debate"); 1976 Amendments at 52998 (ordinary

business matters must be both mundane *and* not involve any substantial policy).

"The second consideration relate[s] to the degree to which the proposal seeks to 'micro-

manage' the company by probing too deeply into matters of complex nature upon which

shareholders, as a group, would not be in a position to make an informed judgment." 1998

Release at *5. This factor applies only in circumstances "where the proposal involves intricate

detail, or seeks to impose specific time-frames or methods for implementing complex policies."
*Id.* Proposals of course "may seek a reasonable level of detail without running afoul of these considerations," and even those proposals that seek to impose time-frames or methods may not be excluded when they concern significant policy issues. *Id.*

These examples make clear that the purpose of the ordinary business exclusion is to restrict "the resolution of ordinary business matters to management and the board of directors" because it is "impracticable" for shareholders to resolve these problems at the annual meeting. *Id.*; *see also Grimes*, 909 F.2d at 531-32 (the purpose of the "ordinary business operation" is to prevent shareholders from seeking to "assert the power to dictate the minutiae of daily business decisions"). The Commission subsequently clarified the logical corollary of this concern by distinguishing "ordinary business" from proposals focusing on general corporate governance, including the reduction of risk. *Grimes*, 909 F.2d at 531. For example, in 2005, the Division wrote that shareholder proposals addressing risks to public health or the environment do not constitute an ordinary business concern:

> To the extent that a proposal and supporting statement focus on the company minimizing or eliminating operations that may adversely affect the environment or the public's health, we do not concur with the company's view that there is a basis for it to exclude the proposal under rule 14a-8(i)(7).

Staff Legal Bulletin No. 14C (CF) (June 28, 2005). Likewise in 2009, the Division recognized that the role of a company's board in assessing risk was critical to a company's governance and transcended ordinary business: "[W]e note that there is widespread recognition that the board's role in the oversight of a company's management of risk is a significant corporate policy matter regarding the governance of the corporation." Staff Legal Bulletin No. 14E (CF), 2009 WL 4363205 at *2 (Oct. 27, 2009).

At the heart of this reasoning is the bedrock distinction between the management of a

corporation's day-to-day activities carried on by its officers and employees and the oversight and governance of broader policy concerns provided by shareholders and their representatives—the board of directors. This division is consistent with, and indeed flows from, longstanding principles of corporate law.

The "business and affairs of every [Delaware] corporation" are "managed by or under the direction of a board of directors[.]" 8 *Del. C.* § 141(a); *accord Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1341 (Del. 1987) ("[t]he board of directors has the ultimate responsibility for managing the business and affairs of a corporation"). Because boards of directors "cannot themselves manage the operations of the firm," they ordinarily satisfy this duty by establishing or approving "the long-term strategic, financial and organizational goals of the corporation," and by supervising "the management of the business and affairs of the corporation." *Grimes v. Donald*, 1995 WL 54441, at *1 (Del. Ch. Jan. 11, 1995,) *aff'd*, 673 A.2d 1207 (Del. 1996). In contrast, corporate officers and employees manage the day-to-day affairs of the corporation.

As explained below, Trinity's proposal respects the Board's core function of overseeing the management of the corporation. Trinity's proposal, which asks the Board to provide oversight over policies that have a serious impact on Wal-Mart's reputation and business, falls squarely within the Board's role of establishing Wal-Mart's long-term goals, strategy and policy concerns. In contrast, Trinity's proposal purposefully does not attempt to impinge on Wal-Mart's day-to-day operations.

### 2) The Proposal Addresses Issues of Corporate Governance And Policy And Thus Falls Outside The Ordinary Business Exception

The Proposal does not relate to Wal-Mart's "ordinary business" operations as described by the Commission and the Division. Instead, the Proposal provides for an improvement to Wal-Mart's corporate governance. It seeks neither to supplant management's day-to-day

decision-making nor to micro-manage the Company. *See* 1998 Release. Specifically, it suggests

that a Board committee charter be amended to provide for Board oversight and reporting on

policies and procedures governing Wal-Mart's product sale determinations and Wal-Mart's

consideration of public safety and reputational risks in connection with those determinations.

It is equally important to establish what the Proposal does not do. It does not dictate what

products should or should not be sold. It does not dictate the form of policy, reporting, oversight

nor the method of decision-making. Moreover, it does not seek that the management of Wal-

Mart take guns off their store shelves. While it is Trinity's sincere hope that the considerations

of Wal-Mart's Board and management lead to the conclusion that assault-type rifles equipped

with high capacity magazines should not be sold, that outcome is neither called for nor required

by the Proposal. Ultimately, this is where the no-action letters cited by Wal-Mart are inapposite:

the relevant proposals sought to displace management's judgment on what products to sell.[4]

While such proposals may address matters of ordinary business operations, this Proposal simply

asks for the decision-making process to be improved, which lacks any indicia of ordinary course

business.

First, the Proposal addresses policy and oversight and not tasks fundamental to

managements' running a business on a day-to-day basis. The Proposal intentionally ensures that

any day-to-day decision-making concerning the matters raised in the Proposal is reserved to the

management of Wal-Mart pursuant to policies created by management with Board oversight.

---

[4] Many of the no-action letters that Wal-Mart has previously relied upon are clearly
distinguishable because they concern proposals attempting to cease (or demand) the sale of a
specific product. *See, e.g., Dillard's Inc.*, 2012 WL 173764 (Feb. 27, 2012). The remainder of
the no-action letters are all inapposite, as they concern demands for a specific course of action
rather than Board oversight, *see, e.g., Gen'l Elec. Co.*, 2010 WL 5067922 (Jan. 7 2011); *The
Walt Disney Co.*, 2010 WL 4312760 (Dec. 22, 2010), or attempt to micro-manage the company
by requiring production of intricate reports, *see, e.g., The Home Depot, Inc.*, 2008 WL 257307
(Jan. 25, 2008); *Family Dollar Stores, Inc.*, 2007 WL 3317923 (Nov. 6, 2007); *Walgreen Co.*,
2006 WL 5381376 (Oct. 13, 2006); *Wal-Mart Stores, Inc.*, 2008 WL 5622715 (Feb. 27, 2008).

The Proposal instead requests engagement on broad strategic considerations at the Board level. This is evident in *how* the Proposal would be implemented. The policies required would be drafted and reported upon only once. Oversight and review of the policies would then be carried out by the Committee quarterly or yearly (or on whatever timeframe decided by Committee) in a manner and schedule at the Committee's discretion. Such strategic oversight decisions cannot be considered ordinary business operations without the definition of ordinary business operations becoming all-encompassing to all matters of corporate governance.

Consistent with this distinction, the Division has regularly denied no-action relief for proposals seeking to improve corporate governance on the basis that they did not constitute ordinary business operations.[5]

Second, the Proposal does not micromanage the company to any degree by "probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." 1998 Release, at *5. Far from probing into complex issues, the Proposal intentionally defers the timing, implementation and the result of all decisions to the Board and management itself.

Thus, the Proposal, lacking any indicia of ordinary business is outside the ordinary business exception. Summary judgment should be granted on this basis alone.

### 3) The Proposal Transcends Ordinary Business Operations

As the Commission and the courts have consistently made clear, even those proposals that relate to ordinary business matters may not be excluded if they address either strategic decision-making or significant policy issues. *See supra* at 10-12; *New York City Emps. Ret. Sys. v. Dole*, 795 F. Supp. at 100 (S.D.N.Y. 1992) ("even if the proposal touches on the way daily business matters are conducted, the statement may not be excluded if it involves a significant

---

[5] *See* n.7, *infra* and Table A appended to the Compendium of Key Authorities, for a list of No-Action letters pertaining to corporate governance and board oversight.

strategic decision as to those daily business matters").[6]  Thus, if the Court were to conclude that the Proposal addresses matters of ordinary business because the policy oversight it requests concerns merchandizing decisions—which respectfully it should not—Wal-Mart must carry its burden to establish that the Proposal does not concern broader strategic or policy issues that transcend—i.e. "rise above"—ordinary business in order to justify excluding the Proposal.

The Proposal addresses board oversight with regard to the sale of products that pose both significant danger to the communities Wal-Mart serves and significant brand and reputational risk to Wal-Mart itself.  In an age of mass shootings, increasing violence, and concerns about product safety, the Proposal goes to the heart of Wal-Mart's impact on and approach to social welfare, as well as the risks such impact and approach may have to Wal-Mart's business.  These matters transcend or rise above ordinary business because of their importance to the Company's business and corporate citizenship.  Whatever Wal-Mart ultimately decides with regard to selling products that implicate these concerns, shareholders should at least have the opportunity to vote to have the Board exercise oversight.  1998 Release at *4 (proposals relating to ordinary business matters but "focusing on sufficiently significant social policy issues" ordinarily not excludable and appropriate for shareholder vote); SEC Staff Legal Bulletin No. 14E (CF), 2009 WL 4363205, at *2 (Oct. 27, 2009) (the "board's role in the oversight of a company's management of risk is a significant corporate policy matter regarding the governance of the corporation").

Wal-Mart acknowledged to the Division "the significant policy issue raised by gun violence," but nonetheless has argued that the Proposal does not address significant policy issues because it was not restricted to the sale of firearms.  Brandom Decl., Ex. C.  As an initial matter,

---

[6] *Apache Corp. v. NYC Emps. Ret Sys.* is not to the contrary, as the court found that the proposal at issue, unlike the Proposal here, sought "to micromanage the company to an unacceptable degree" because shareholders "as a group are not sufficiently involved in the day-to-day operations…to fully appreciate its complex nature." 621 F. Supp. 2d 444, 452 (S.D. Tex. 2008).

Wal-Mart's "interpretation" of the ordinary business exception would swallow the rule, as Wal-Mart is also of the view that the Proposal is too specifically focused on products offered for sale. This implicit Catch-22 recalls the D.C. Circuit's refusal to countenance an interpretation of Rule 14a-8 that would "permit the exclusion of practically any shareholder proposal on the grounds that it is either 'too general' or 'too specific.'" *Med. Comm.*, 432 F.2d at 679.

Moreover, that the Proposal is not directed solely to Wal-Mart's sale of guns confirms its validity. Rather than placing limitations on Wal-Mart's sale of a particular product, the Proposal calls for the Board to consider Wal-Mart's overarching approach to products that are "*especially dangerous*" to public safety, has the "*substantial potential*" of impairing Wal-Mart's reputation, or "would *reasonably* be considered by *many*" to be offensive to the values Wal-Mart has publicly and consistently embraced. These broader, systemic considerations are similar to those that Wal-Mart has already assigned to the Compensation, Nominating and Governance Committee, and are precisely those matters that transcend the day-to-day minutiae that is properly left to Wal-Mart's officers and employees.

## II.    The Division's No-Action Letter Is Unpersuasive And Should Be Given No Deference

The No-Action Letter as an informal, non-reviewable letter lacking explanation or rationale cannot be given deference by this Court. Each year the Division is tasked with reviewing hundreds of requests for no-action letters, the bulk of which require a response between December and March. *See Amalgamated*, 821 F. Supp. at 885; Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals, Exchange Act Release No. 9344, 95 S.E.C. Docket 1040, 1976 WL 160411, at *3 (July 7, 1976) ("1976 Release") ("With its limited staff and the need for rapid examination, the Commission necessarily cannot do more in each case than make a quick analysis of the material submitted that, perforce, lacks the kind of in-depth study that would be essential to a definitive

determination whether a particular filing complies with the rules."). The Commission itself acknowledges that it and its staff offer only "informal advice" with *no* precedential effect, and "do not purport in any way to issue 'rulings' or 'decisions'" that are to be given deference in current or future judicial considerations. 1976 Release at *3-5 ("Because the staff's advice on contested proposals is informal and nonjudicial in nature, it does not have precedential value with respect to *identical* or similar proposals submitted to other issuers in the future.") (emphasis added). The Commission has therefore argued as *amicus curiae* to the D.C. Circuit that Rule 14a-8 must be interpreted as authorizing a private right of action in federal district court in light of "the hundreds of shareholder proposals the staff must review each year and all of the other demands on its limited resources." *See Roosevelt*, 958 F.2d at 423 (quoting the Commission's *amicus* brief). The Commission further disclaims authority on its website, noting that only "a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials." SEC Division of Corporation Finance, *Informal Procedures Regarding Shareholder Proposals*, SEC, *available at* http: //www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm (last modified Nov. 2, 2011).

Accordingly, the law is well-settled that no-action letters issued by the Division are entitled to no deference beyond the persuasiveness of each letter's reasoning. *See, e.g., Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 116 (3d Cir. 2002) ("'SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have.'") (quoting *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136 (2d Cir. 2002)), *rev'd on other grounds*, 544 F.3d 493 (3d Cir. 2008); *Morales v. Quintel Entm't*, 249 F.3d 115, 129 (2d Cir. 2001) (holding no-action letters lack "any binding precedential force on the federal courts"). Courts evaluating shareholder proposals "must independently analyze the merits of a dispute" and reach their own

conclusion as to whether a proposal is properly excluded. *Apache*, 621 F. Supp. 2d at 449.

For the reasons set forth above, Wal-Mart's refusal to include the Proposal in its proxy materials violates Rule 14a-8, and the No-Action Letter's statement that "[t]here appears to be some basis" for Wal-Mart's exclusion should not be relied on for any contrary conclusion. The Court need not, and should not, give weight to the no-action determination. First, the Division's pro forma finding does not satisfy Wal-Mart's burden to show an exception applies. *Am. Fed'n*, 462 F. 3d at 125 (the Company has the burden of establishing on exception applies). Second, to adopt the Division's decision would condone arbitrary administrative conduct that is inconsistent with the Commission's own construction of the Rule and its purpose.

Nor does the No-Action Letter provide any reasoning the Court could find persuasive. In two sentences of "analysis," the letter does not even give lip service to the governance nature of the Proposal or the significant policy issues it implicates. Instead, the No-Action Letter mischaracterizes the Proposal as concerning the "sale of particular products and services," which removes any persuasive authority the No-Action Letter may have. *Amalgamated*, 821 F. Supp. at 888 ("The SEC's views on the issues raised in the 1991 proposal are unclear, because the staff based its conclusion partly on an erroneous characterization of the proposal.").

Finally, the No-Action Letter cannot be reconciled with prior letters of the Division itself. On numerous occasions, the Division has denied no-action requests for proposals that concerned board oversight.[7] The Division has also denied no-action requests for proposals that concerned

---

[7] *See, e.g., Citigroup Inc.*, SEC No-Action Letter, 2012 WL 6723109, at *1 (Feb. 15, 2013) (Division refusing to exclude under Rule 14a-8(i)(7) a proposal requesting "that the board undertake a review and institute any appropriate policy changes . . . to make it more practical to deny indemnification of directors when appropriate from the standpoint of Citigroup and public policy"); *Corrections Corp. of Am.*, SEC No-Action Letter, 2011 WL 6837534, at *1 (Feb. 10, 2012) (same with regard to proposal requesting "that the board provide biannual reports to stockholders on its oversight of the company's efforts to reduce incidents of rape . . . and to describe the boards oversight of the company's response"); *Motorola, Inc.*, SEC No-Action

broader policy issues related to the integrity of the corporation, including human rights,[8]

environmental and public health,[9] or even matters regarding animal welfare or net neutrality.[10]

## CONCLUSION

For the foregoing reasons it is respectfully submitted that Trinity's motion for summary

judgment be granted in all respects.

/s/ Joel Friedlander
Joel Friedlander (Bar No. 3163)
Christopher M. Foulds (Bar No. 5169)
Jaclyn Levy (Bar No. 5631)
FRIEDLANDER & GORRIS, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500

*Attorney for the Plaintiff Trinity Wall Street*

Dated:  June 18, 2014

---

Letter, 2002 WL 480349, at *2 (Mar. 8, 2002) (same regarding proposal that board "prepare a description of the board's role in the development and monitoring of Motorola's long-term strategic plan," as such proposal "relates to the Board of Directors' participation in the development of fundamental business strategy and long-term plans").

[8] *See, e.g., Citigroup Inc.*, SEC No-Action Letter, 2008 WL 524150, at *1 (Feb. 21, 2008) (refusing no-action request under Rule 14a-8(i)(7) for proposal requesting report "on how policies address or could address human rights issues, with a view toward adding appropriate policies and procedures").

[9] *See, e.g., Newmont Mining Corp.*, SEC No-Action Letter, 2007 WL 403867, at *1 (Feb. 5, 2007) (refusing no-action request under Rule 14a-8(i)(7) for proposal requesting "that management review and report on the potential environmental and public health damage resulting from the company's mining and waste disposal operations in Indonesia").

[10] *See, e.g., Denny's Corp.*, SEC No-Action Letter, 2009 WL 772857, at *4 (Mar. 17, 2009) (refusing no-action request for proposal "encourage[ing] Denny's to commit to selling at least 10 percent cage-free eggs by volume."); *Wyeth*, SEC No-Action Letter, 2005 WL 326905, at *9 (Feb. 8, 2005) (same regarding proposal requesting board to discontinue promoting a product and all related products pending review and reporting to shareholders on viability of adopting policy for "protection of all [horses] used in the production of Wyeth's products); *Verizon Commc'ns. Inc.*, SEC No-Action Letter, 2010 WL 5409427, at *1 (Feb. 15, 2009) (refusing no-action request for proposal requesting Verizon to "publicly commit to operate its wireless broadband network consistent with Internet network neutrality principles").