IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRINITY WALL STREET,

                    Plaintiff,

        v.                                          C.A. No. 14-405-LPS

WAL-MART STORES, INC.,

                    Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF WAL-MART STORES, INC.

Joel Friedlander (Bar No. 3163)
Christopher M. Foulds (Bar No. 5169)
FRIEDLANDER & GORRIS, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500

*Attorneys for the Plaintiff Trinity Wall Street*

Dated:  July 30, 2014

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

NATURE AND STAGE OF PROCEEDINGS ................................................ 4

SUMMARY OF ARGUMENT ......................................................................... 4

STATEMENT OF FACTS ............................................................................... 4

ARGUMENT ..................................................................................................... 4

      I.     THE PROPOSAL DOES NOT FALL WITHIN THE ORDINARY
           BUSINESS OPERATIONS EXCEPTION................................................ 4

           A.   THE PROPOSAL DOES NOT ADDRESS WAL-MART'S
                ORDINARY BUSINESS OPERATIONS.......................................... 4

           B.   THE PROPOSAL TRANSCENDS ORDINARY BUSINESS .......... 8

           C.   WAL-MART'S BULLETIN 14E ARGUMENT
                HAS NO MERIT............................................................................... 11

      II.    WAL-MART'S NEW ARGUMENT THAT THE PROPOSAL IS
           VAGUE IS MERITLESS .......................................................................... 12

      III.   THE COURT MUST INDEPENDENTLY EVALUATE WAL-MART'S
           WRONGFUL EXCLUSION OF THE PROPOSAL................................. 16

      IV.   TRINITY IS ENTITLED TO INJUNCTIVE RELIEF ............................. 18

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Rules and Statutes**                                                                          **Page(s)**

Local Rule 47.5.4 ................................................................................................   17

Rule 14a-8 ........................................................................................................   1

**Cases**

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
821 F. Supp. 877 (S.D.N.Y. 1993) ....................................................................   19

*Austin v. Consol. Edison Co.*,
788 F. Supp. 192 (S.D.N.Y. 1992) ....................................................................   3, 17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ..........................................................................................   18

*Grimes v. Centerior Energy Corp.*,
909 F.2d 529 (D.C. Cir. 1990) ...........................................................................   5, 9

*Lovenheim v. Iroquois Brands, Ltd.*,
618 F. Supp. 554 (D.D.C. 1985) ........................................................................   18

*N.Y.C Ret. Sys. v. Am. Brands, Inc.*,
634 F. Supp. 1382 (S.D.N.Y. 1986).....................................................................   18

*N.Y.C. Ret. Sys. v. Dole Food Co.*,
795 F. Supp. 95 (S.D.N.Y. 1992) .......................................................................   8

*S&D Trading Academy, LLC v. AAFIS Inc.*,
336 F. App'x 443 (5th Cir. 2009) .......................................................................   17

*Shields v. Zuccarini*,
254 F.3d 476 (3d Cir. 2001)................................................................................   18

**No Action Letters**

*Apache Corp.*,
SEC No Action Letter, 2008 WL 615894 (Mar. 5, 2008) ...................................   9

*Assocs. First Capital Corp.*,
SEC No Action Letter, 1999 WL 68604 (Feb. 12, 1999) ....................................   15

*Avaya Inc.*,

{FG-W0375127.}

SEC No Action Letter, 2006 WL 3007364 (Oct. 18, 2006) ................................................ 13

*Berkshire Hathaway Inc.*,
SEC No Action Letter, 2011 WL 6859125 (Jan. 31, 2012)................................................ 15

*Boeing Co.*,
SEC No Action Letter, 2011 WL 757455 (Mar. 2, 2011) ................................................ 15

*Cent. Fed. Corp.*,
SEC No Action Letter, 2010 WL 943083 (Mar. 8, 2010) ................................................ 9

*ConocoPhillips*,
SEC No Action Letter, 2005 WL 484408 (Feb. 24, 2005)................................................ 15

*Denny's Corp.*,
SEC No Action Letter, 2009 WL 772857 (Mar. 17, 2009) ................................................ 10

*Dillards, Inc.*,
SEC No Action Letter, 2012 WL 173764 (Feb. 27, 2012)................................................ 10

*Dominion Res., Inc.*,
SEC No Action Letter, 2011 WL 494126 (Feb. 9, 2011)................................................ 15

*Fuqua*,
SEC No Action Letter, 1991 WL 178684 (Mar. 12, 1991). ................................................ 15

*Gen. Elec. Co.*,
SEC No Action Letter, 2003  WL 262463 (Jan. 23, 2003)................................................ 15

*Home Depot, Inc.*,
SEC No Action Letter, 2013 WL 1452862 (Mar. 28, 2013) ................................................ 15

*Intel Corp.*,
SEC No Action Letter, 2012 WL 160565 (Feb. 23, 2012)................................................ 14

*iRobot Corp.*,
SEC No Action Letter, 2013 WL 267335 (Mar. 26, 2013) ................................................ 13

*JPMorgan Chase & Co.*,
SEC No Action Letter, 2010 WL 147293 (Mar. 12, 2010) ................................................ 9

*Kroger Co.*,
SEC No Action Letter, 2002 WL 1052022 (Apr. 12, 2002)................................................ 15

*Mattel, Inc.*,
SEC No Action Letter, 2012 WL 483197 (Feb. 10, 2012)................................................ 9

{FG-W0375127.}

*Merck & Co.*,
  SEC No Action Letter, 2003 WL 942796 (Feb. 26, 2003)................................................. 14

*NetApp, Inc.*,
  SEC No Action Letter, 2014 WL 1878421 (June 27, 2014)............................................ 15

*Pepsi Co. Inc.,*
  SEC No Action Letter, 2012 WL 542708 (Feb. 16, 2012)............................................. 12

*PetSmart, Inc.*,
  SEC No Action Letter, 2011 WL 528414 (Mar. 24, 2011) ............................................. 9

*Prudential Fin. Inc.*,
  SEC No Action Letter, 2007 WL 571098 (Feb. 16, 2007)............................................. 15

*Pugent Energy Inc.*,
  SEC No Action Letter, 2002 WL 523341 (Mar. 7, 2002) ............................................. 15

*Rite Aid Corp.*,
  SEC No Action Leterr, 2009 WL 829472 (Mar. 26, 2009) ............................................ 10

*Sempra Energy*,
  SEC No Action Letter, 2011 WL 6425347 (Jan. 12, 2012)............................................ 12

*Staples, Inc.*,
  SEC No Action Letter, 2012 WL 748854 (Mar. 5, 2012) ............................................. 15

*The Home Depot, Inc.*,
  SEC No Action Letter, 2008 WL 257307 (Jan. 25, 2008)............................................. 7

*Walgreen Co.*,
  SEC No Action Letter, 1997 WL 599903 (Sep. 29, 1997)............................................. 10

*Wal-Mart Stores, Inc.,*
  SEC No Action Letter, 2008 WL 5622715 (Feb. 27, 2008)............................................ 7

*Wal-Mart Stores, Inc.*,
  SEC No Action Letter, 2010 WL 369421 (Mar. 31, 2010) ............................................ 10

*Walt Disney Co.*,
  SEC No Action Letter, 2012 WL 5267955 (Dec. 13, 2012)............................................ 13

*Western Union*,
  SEC No Action Letter, 2011 WL 916163 (Mar. 14, 2011) ............................................ 12

*Western Union Co.*,
  SEC No Action Letter, 2013 WL 368364 (Mar. 14, 2013) ............................................ 14

{FG-W0375127.}

*Wyeth*,
SEC No Action Letter, 2005 WL 326905 (Feb. 8, 2005) .................................................... 10

*Yahoo! Inc.*,
SEC No Action Letter, 2007 WL 1175903 (Apr. 16, 2007) ................................................ 13

**Other Authorities**

*Walmart 2013 Global Responsibility Report* (2013),
http://corporate.walmart.com/microsites/global-responsibility-report-2013/pdf/Walmart_
GRR.pdfhttp://corporate.walmart.com/microsites/global-responsibility-report-
2013/pdf/Walmart_ ......................................................................................................... 14

*Walmart 2014 Global Responsibility Report* (2014),
http://www.corporatereport.com/walmart/2014/grr/_pdf/Walmart_2014_GRR.pdf .......... 14

*Amendments to Clauses on Shareholder Proposals*, Exchange Act Release
No. 34-40018, 67 SEC Docket 373, 1998 WL 254809 (May 21, 1998) .......................... passim

SEC Staff Legal Bulletin No. 14E (CF),
2009 WL 4363205 (Oct. 27, 2009) ................................................................................... 8, 12

SEC Staff Legal Bulletin No. 14B,
2004 WL 3711971 (Sept. 15, 2004) .................................................................................. 13, 16

Trinity Wall Street[1] respectfully submits this memorandum of law in further support of its motion for summary judgment, dated June 18, 2014, and in opposition to Wal-Mart's motion for summary judgment, dated July 3, 2014.

## PRELIMINARY STATEMENT

Wal-Mart makes no argument that the Proposal seeks to micromanage the business of the Company. Thus, only the first of the two "central considerations" that the SEC has identified as relevant to the application of the "ordinary business operations" exception is at issue here. As set forth in the adopting release for Rule 14a-8, this first consideration concerns

> [c]ertain tasks [that] are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight. Examples include the management of the workforce, such as hiring, promotion, and termination of employees, decisions on production quality and quantity, and the retention of suppliers.

Amendments to Clauses on Shareholder Proposals, Exchange Act Release No. 34-40018, 67 SEC Docket 373, 1998 WL 254809, at *4 (May 21, 1998) ("1998 Release").

This consideration seeks to preserve management's ability to perform the "ordinary" (*i.e.*, routine and mundane) tasks fundamental to a business's daily operations. Even then, it is subject to the qualification that a proposal that raises a significant policy issue is not excludable even if it relates to ordinary business operations. The significant issue can be one of social or corporate policy. Indeed, the adopting release makes clear that even subjects like senior management compensation is a significant policy issue for this purpose. *See id.* at *4 n.43.

Trinity is not seeking "direct shareholder oversight" of ordinary business decisions and

---

[1] Capitalized terms have the meaning assigned in Trinity's opening brief ("Br.") (D.I. 38). Wal-Mart's opposition brief, dated July 11, 2014 (D.I. 51), is cited as "Def. Opp." and it's brief in support of its motion for summary judgment, dated July 3, 2014 (D.I. 48), is cited as "Def. Br."

{FG-W0375127.}

therefore the Proposal is not excludable.  The Proposal is a corporate governance proposal dealing with board oversight of the formulation and implementation of policies and standards relevant to the sale of products such as assault rifles or racially derogatory materials posing special and obvious risks to the public or the Company.

Wal-Mart generally claims the Proposal focuses on the sale of products that impair Wal-Mart's reputation.  In fact, the Proposal requests oversight of policies and standards relating to the sale of products implicating public safety and welfare, the good reputation of the Company with the public and/or the family and community brand values that Wal-Mart seeks to project. The intent of the Proposal encompasses both the social and corporate policy concerns that support the need for good corporate citizenship, none of which are matters of ordinary business. *See* Decl. of the Rev. Dr. James H. Cooper at 3 (D.I. 39).

Importantly, by arguing that the Proposal could properly be brought before the annual meeting under Wal-Mart's bylaws, Wal-Mart has conceded that the Proposal does not offend the division of responsibility between shareholders and management contemplated under Delaware law.  Def. Opp. at 19.  It is this division of responsibility under state law that underlies the ordinary business operations exception, 1998 Release at *4, and that compels the conclusion that the Proposal is not excludable under Rule 14a-8(i)(7).

None of Wal-Mart's four substantive arguments support excluding the Proposal.  *First*, Wal-Mart argues that a proposal does not become exempt from exclusion under the ordinary business operations exception simply because it calls for board action.  As shown below, this is a red herring.  Trinity does not base its argument on the mere fact it is requesting board action. Rather, the Proposal is not excludable because of the *nature* of the action that it requests.

*Second*, Wal-Mart argues that Trinity's Proposal runs counter to the principles governing

proposals requesting risk assessments set forth in SEC Staff Legal Bulletin 14E.  Wal-Mart cites

a no-action letter obtained by Western Union Co. concerning a proposal that sought a risk

assessment report on multiple topics.  As shown below, this argument fails because Trinity is not

seeking a risk assessment, and even if it were, the relevant risks that might be assessed arise from

potential tragic events involving products sold by Wal-Mart, not the sales of those products

themselves.

Third, Wal-Mart argues that the Proposal does not focus on a significant policy issue

because it deals with guns on the shelves and not guns in society, because it is in all events not

directed solely to the sale of guns and because there is no "nexus" to the Company because the

Company is a retailer and not a manufacturer.  Given Wal-Mart's influence, its future decisions

on whether to sell guns and high-capacity magazines will have a societal effect.  As shown

below, there is no merit to any of these arguments.

Finally, Wal-Mart urges the Court to give "some deference" to the perfunctory no-action

letter it obtained from the Division's Staff.  Wal-Mart purports to buttress this argument with a

declaration describing the Division's no-action letter process.  However, this is not a case like

Austin v. Consol. Edison Co., 788 F. Supp. 192, 195 (S.D.N.Y. 1992), cited by Wal-Mart, where

there was a long line of no-action letters dealing with the precise issues presented here.  As

shown below, the issues presented here are novel and the Staff's cursory and non-binding no-

action letter provides little to no assistance to the Court.

Having failed to advance any meritorious argument in opposition to Trinity's motion for

summary judgment or in support of its own motion, including the contention discussed below

that the Proposal is too vague, Wal-Mart's motion should be denied and Trinity's should be

granted.

{FG-W0375127.}

## NATURE AND STAGE OF PROCEEDINGS

Trinity filed its Verified Complaint and a Motion for a Preliminary Injunction and Temporary Restraining Order on April 1, 2014.  (D.I. 1, 4).  On April 11, 2014, the Court heard argument on, and ultimately denied, the motion.  (D.I. 18).  On May 6, 2014, Wal-Mart filed a motion to dismiss the Complaint.  (D.I. 26).  Plaintiff filed an Amended Verified Complaint on May 19, 2014.  (D.I. 32).  On June 5, 2014, Wal-Mart moved to dismiss the Amended Complaint.  (D.I. 33).  Trinity opposed the motion on June 23, 2014.  (D.I. 43).  Trinity moved for summary judgment on June 18, 2014.  (D.I. 37).  Wal-Mart cross-moved for summary judgment on July 3, 2014, (D.I. 47) and opposed Trinity's motion on July 11, 2014 (D.I. 51).

## SUMMARY OF ARGUMENT

1.     Wal-Mart may not exclude the Proposal because it neither falls under the ordinary business operations exception nor is it "so inherently vague or indefinite."  *See infra* Points I-III.

2.     Wal-Mart's unlawful exclusion of the Proposal satisfies each of the elements for injunctive relief, and therefore Trinity is entitled to equitable relief enjoining Wal-Mart from issuing its 2015 Proxy Materials without including the Proposal.  *See infra* Point IV.

## STATEMENT OF FACTS

The facts underlying the parties' motions for summary judgment are not in dispute. Trinity incorporates the statement of facts in its opening brief, dated June 18, 2014.  (D.I. 37).

## ARGUMENT

## I.     THE PROPOSAL DOES NOT FALL WITHIN THE ORDINARY BUSINESS OPERATIONS EXCEPTION

### A.  The Proposal Does Not Address Wal-Mart's Ordinary Business Operations

As explained in Trinity's opening brief, the "general underlying policy" of the ordinary business operations exception is to permit exclusion of shareholders from those—and only

{FG-W0375127.}

those—core business operations that shareholders could not practicably direct at their annual meeting.  1998 Release at *4.  Consistent with this policy, the Commission has set forth two circumstances in which the ordinary business exception would be satisfied:  (1) where the proposal's subject matter is "so fundamental to management's ability to run a company on a day-to-day basis that [it] could not, as a practical matter, be subject to direct shareholder oversight," and (2) where the proposal "seeks to 'micro-manage' the company by probing too deeply into matters of complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment."  *Id.* at *4-5.  Neither circumstance applies here.  Br. at 13-15.

In its cross-motion and opposition, Wal-Mart does not contend that the Proposal falls under the latter, "micro-management" consideration and therefore concedes that the Proposal does not.  Nor does Wal-Mart claim—because it cannot—that the Proposal regulates the minutiae of Wal-Mart's business matters, *see Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531-32 (D.C. Cir. 1990), or otherwise would impair Wal-Mart's ability to manage its day-to-day operations, 1998 Release at *4.  Nonetheless, Wal-Mart claims that the Proposal falls within the ordinary business operations exception by mischaracterizing it as purportedly focused on the sale of products that impair Wal-Mart's reputation.  Def. Br. at 10; Def. Opp. at 12.

By requesting that the Board provide oversight over Wal-Mart's policies concerning the sale of products with substantial community and reputational impact, the Proposal focuses on matters of corporate governance and does not try to "solve" a problem concerning Wal-Mart's sales.  To the contrary, the Proposal seeks to ensure that the Board provides sufficient oversight such that it—not Trinity or any other shareholder—can determine whether a problem exists. Asking that the Board evaluate such high-level policy issues is a proper shareholder proposal that neither infringes upon Wal-Mart's management of the company nor is impracticable for

{FG-W0375127.}

shareholders to consider.  Accordingly, it does not run afoul of the principle in the Adopting

Release that "[t]he general underlying policy of this exclusion is consistent with the policy of

most state corporate laws: to confine the resolution of ordinary business problems to

management and the board of directors, since it is impracticable for shareholders to decide how

to solve such problems at an annual shareholders meeting."  1998 Release at *4.

     While the Proposal bears some tangential connection to Wal-Mart's sales, the ordinary

business operations exception is not triggered whenever a proposal can be linked to a company's

business, no matter the attenuation.  As explained by the Commission, the standard is whether

the proposal delves into what is fundamentally a question of routine business management.  *Id.*

     Wal-Mart has not met its burden on this question.  The Proposal does not require,

preclude, alter, or make any other conceivable change to Wal-Mart's sale of products, Br. at 14,

nor does it require intricate reports on Wal-Mart's products.  Accordingly, the Proposal does not

interfere with Wal-Mart's sale of products or its handling of everyday matters such as

"production, quality and quantity," the "retention of suppliers," or "management of the

workforce," 1998 Release at *4, which distinguishes it from both the considerations set forth by

the Commission, as well as the no-action letters Wal-Mart wrongly claims are analogous.

*Compare* Def. Br. at 8-9 *and* Def. Opp. at 10 *with* Br. at 14 n.4 (explaining that no-action letters

cited by Wal-Mart are inapposite because they demand specific course of action, seek to micro-

manage the company, or seek to end the sale of specific product).  On this basis alone, Wal-Mart

may not exclude the Proposal under the ordinary business operations exception.[2]

---

[2] Wal-Mart takes issue with Trinity's distinguishing certain no-action letters that involved
proposals that micromanaged the company, claiming that *every time* the Staff has granted no-
action relief on the micromanagement prong of the ordinary business operations exception, it
expressly states so.  Def. Opp. at 9 & n.3.  Not only does Wal-Mart fail to substantiate this
assertion, it is in any event irrelevant.  As Wal-Mart itself explained in its January 25, 2008 letter

{FG-W0375127.}

Implicitly recognizing the weakness of its argument that the Proposal addresses the sale of products, Wal-Mart next claims that Trinity cannot evade the ordinary business exception simply by arguing that its Proposal involves Wal-Mart's Board.  Again, Wal-Mart mischaracterizes and oversimplifies the Proposal.  Trinity has never argued that the Proposal falls outside of the ordinary business operations exception merely by virtue of the fact that it requests Board action.  *See* Def. Br. at 13-15.  It is the nature of the proposal that controls, and here, the Proposal's focus is the improvement of Board consideration of matters of community responsibility, good corporate citizenship and reputation, none of which can be considered ordinary business.  Given this purpose, the Proposal falls well outside of the Commission's understanding of the purpose and meaning of that exception:  to permit exclusion of shareholders from those—and only those—business operations that shareholders could not practicably direct at their annual meeting.  The Proposal recognizes that evaluation of management's policy considerations in making merchandizing decisions rests squarely with the Board and merely seeks to address a gap in Wal-Mart's corporate governance and board oversight.  Trinity is therefore entitled to summary judgment that the Proposal does not fall within the ordinary business operations exception.

---

to the Division, the *Wal-Mart Stores, Inc.*, *Family Dollar Stores* and *Walgreen Co.* proposals required reporting on the companies' efforts to secure its supply of goods, enter into commercial and contractual relationships with suppliers and review, monitor and control the shipping of products to suppliers, and thus "interfere[d] with the Company's ability to operate its business on a day-to-day basis and to make decisions about what products to buy and from whom to buy them."  *Wal-Mart Stores, Inc.*, 2008 WL 5622715, at *4 (Feb. 27, 2008); *see also The Home Depot, Inc.*, 2008 WL 257307, at *3 (Jan. 25, 2008) (concerning substantially similar proposal).  Wal-Mart does not, because it cannot, advance the same argument here.

### B.  The Proposal Transcends Ordinary Business

Even were the Court to conclude that the Proposal is directed at matters of ordinary business operations, Wal-Mart must also establish that the Proposal does not concern *either* important issues of social policy *or* important issues of corporate policy, and thus does not "transcend" ordinary business operations.  *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 795 F. Supp. 95 at 100 (S.D.N.Y. 1992); Br. at 10-12; *see also* 1998 Release at *4 & n.43; SEC Staff Legal Bulletin No. 14E (CF), 2009 WL 4363205, at *2 (Oct. 27, 2009) (the "board's role in the oversight of a company's management of risk is a significant corporate policy matter regarding the governance of the corporation").  Here, the Proposal focuses on *both* such concerns by addressing Wal-Mart's corporate governance with regard to board oversight of the sale of products with a substantial impact on community safety, company reputation and brand identity.

Board oversight over company policy with respect to the sale of certain categories of products qualifies as a significant policy consideration, and Wal-Mart does not contend otherwise.  Instead, Wal-Mart asserts that because the Proposal is not limited to guns or some other product, it *cannot* address a transcendent policy issue.  Def. Br. at 13-14; Def. Opp. at 15-16.  But Wal-Mart utterly fails to explain why that it so and also fails to appreciate the novel nature of the Proposal:  By its own terms, the Proposal is limited to significant corporate and social policy issues.  None of the products that Wal-Mart identifies in its briefing will be addressed by the Proposal unless the Board—not Trinity or any other shareholder—concludes that it is especially dangerous to public safety, has the substantial potential of impairing Wal-Mart's reputation, or would reasonably be considered by many to be offensive to the values Wal-Mart has publicly and consistently embraced.

Wal-Mart cites certain no-action letters in support of its assertion that the Proposal is too broad, Def. Br. at 13-14; Def. Opp. at 16, each of which is readily distinguishable because the proposal at issue there implicated ordinary, everyday matters. For example, in *PetSmart, Inc.*, the proposal addressed "violations of administrative matters such as record keeping" in addition to violations of state and federal law concerning animal abuse. 2011 WL 528414, at *1 (Mar. 24, 2011). And in *Grimes*, the proposal went beyond capital expenditures that addressed policy issues to potentially all capital expenditures "of any kind."[3] 909 F.2d at 532. By contrast, the Proposal is undeniably narrower in breadth, and limited to requesting board oversight over Wal-Mart's policies and standards for sales that, in the Board's discretion, may have substantial community and reputational impact.

Next, Wal-Mart argues that the Proposal cannot transcend ordinary business operations because it is limited to guns on the shelves rather than guns in society. Def. Br. at 12; Def. Opp. at 15. That is a false distinction. Wal-Mart's influence over guns in its communities is effectuated by its sale of such guns: Guns equipped with high-capacity magazines stocked on Wal-Mart's shelves or listed on Wal-Mart's website are intended by Wal-Mart to lead to such guns in society. Indeed, as America's largest retailer of numerous products, including but not limited to the guns it sells, this connection is particularly apparent. Numerous no-action letters cited by Trinity in its opening brief highlight how a company's business, including the sale of

---

[3] *See also Mattel, Inc.*, 2012 WL 483197, at *1-11 (Feb. 10, 2012) (granting no-action relief where proposal required report on compliance with ICTI Code, which in turn compelled compliance with all applicable local laws concerning sanitation and risk protection); *JPMorgan Chase & Co.*, 2010 WL 147293, at *1 (Mar. 12, 2010) (same where proposal broadly limited "JPMorgan Chase's decisions to extend credit or provide other financial services to particular types of customers"); *Cent. Fed. Corp.*, 2010 WL 943083, at *1 (Mar. 8, 2010) (same where proposal generally requested that the "board appoint a committee to explore strategic alternatives for maximizing shareholder value"); *Apache Corp.*, 2008 WL 615894, at *1-2 (Mar. 5, 2008) (same where proposal went beyond employment discrimination to advertising, marketing, sales, and charitable contributions).

products, can implicate policy concerns that transcend ordinary business.  *See, e.g.*, *Denny's Corp.*, 2009 WL 772857, at *1-3 (Mar. 17, 2009) (denying no-action relief for proposal concerning sale of cage free eggs); *Wyeth*, 2005 WL 326905, at *1 (Feb. 8, 2005) (same for proposal requesting board to discontinue promoting products pending review of policy for protection of horses); *see also Wal-Mart Stores, Inc.*, 2010 WL 369421, at *1-2 (Mar. 31, 2010) (same for proposal requesting that board require its poultry suppliers to switch to a particular method of slaughter that is less cruel).

Finally, Wal-Mart claims the Proposal does not concern a transcendent issue of social or corporate policy because, being a retailer rather than manufacturer, it does not bear "sufficient nexus" to the products the Proposal may lead the Board to consider.  Def. Br. at 14-15; Def. Opp. at 17-18.  The Staff has consistently denied no-action relief where a company sells products implicating transcendent policy issues.  *See supra* at 9-10.  Moreover, such a distinction is contrary to common sense, as merchandizing decisions can raise policy issues every bit as much as manufacturing decisions, particularly when considering such a large retailer as Wal-Mart.[4]

In sum, the Proposal addresses board oversight with regard to the sale of products that pose significant danger to the communities Wal-Mart serves and reputational risk to Wal-Mart itself, and thus concerns transcendent issues of corporate and social policy.

---

[4] No-action relief was granted in the letters Wal-Mart cites because the proposals requested that actions, such as issuing reports or imposing restrictions, be taken to address a specific product, not because the relevant company was a retailer rather than a manufacturer.  *See* Def. Br. at 14-15 *and* Def. Opp. at 17-18 (citing *Wal-Mart Stores, Inc.*, 2001 WL 253625, at *1 (Mar. 9, 2001) (proposal requested that Wal-Mart stop selling handguns); *Walgreen Co.*, 1997 WL 599903, at *1 (Sep. 29, 1997) (proposal requested that company stop selling tobacco products); *Dillards, Inc.*, 2012 WL 173764, at *15 (Feb. 27, 2012) (proposal requested that company develop plan to phase out sale of fur from raccoon dogs); *Rite Aid Corp.*, 2009 WL 829472, at *1 (proposal requested report on response to pressure to stop selling tobacco products)).

### C.  Wal-Mart's Bulletin 14E Argument Has No Merit

Wal-Mart also argues that the Proposal seeks a risk assessment and is therefore properly excludable under Staff Legal Bulletin 14E.  Def. Br. at 9; Def. Opp. at 13.  But the Proposal does not request that the Board undertake a risk evaluation.  Rather, the Proposal requests that the Board provide oversight regarding the formulation of policies and standards.  This may, or may not, involve a risk evaluation, but that is wholly within the discretion of the Board.  Indeed, Wal-Mart appears to have regularly adopted policies without undertaking a risk evaluation.[5]  And Wal-Mart could, for example, simply adopt a policy not to sell rifles equipped with high-capacity magazines as a matter of good corporate citizenship based on the lack of importance of these weapons to the sports of hunting and target shooting and in the face of the obvious danger that these weapons will be used for mass murder.  Such a decision would not require a risk assessment, and because the Proposal does not compel *how* management considers its merchandizing decisions or *what* it ultimately decides, but merely asks that there be board oversight of such determinations, it also would not compel such an evaluation.  Wal-Mart's attempt to recast the Proposal as requiring such a risk evaluation fails.

In any event, even if the Proposal did involve some evaluation of risk, the underlying subject matter of that risk is not Wal-Mart's ordinary business.  Wal-Mart's ordinary business risk is exemplified by the "Risk Factors" identified in its Form 10-K.  *See* Fischer Decl. Ex. 8 (D.I. 50).  There, Wal-Mart explained that it is subject to ordinary business risk based on whether it can "predict consistently and successfully the products and services our customers will demand."  *Id.*  at 16.  By contrast, the "risks" addressed in the Proposal are those to society and

---

[5] Wal-Mart has attached its music policy to its motion papers, but the policy includes no risk evaluation.  Edwards Decl. Ex. C (D.I. 49).  Moreover, Wal-Mart has never claimed that its policy not to sell handguns other than in Alaska is based on an evaluation of risk.

{FG-W0375127.}

Wal-Mart should a product, after it is sold, cause harm to Wal-Mart's customers or its brand and reputation. This is far afield from ordinary business matters such as whether Wal-Mart has adequately predicted the next blockbuster Christmas toy.

Finally, Bulletin 14E further confirms that even if the Proposal were construed as requesting a risk assessment, and even if the risks analyzed were ordinary business risks, the Proposal would still not be excludable if it involves social or corporate policies that transcend ordinary business. As shown above, the Proposal does just that. Bulletin 14E also confirms that "the board's role in the oversight of a company's management of risk" is itself a "significant policy matter regarding the governance of the corporation" that "transcend[s] the day-to-day business matters of a company." SEC Staff Legal Bulletin No. 14E (CF), 2009 WL 4363205, at *2. The Proposal concerns the assignment of this responsibility to the Board, and in particular the Committee, and thus may not be excluded as calling for reporting on evaluation of risk.[6]

## II.   WAL-MART'S NEW ARGUMENT THAT THE PROPOSAL IS VAGUE IS MERITLESS

After 11 months of interacting with Plaintiff, seeking no-action relief, and briefing its

---

[6] The no-action letters relied on by Wal-Mart support Trinity's position. Def. Br. at 9 n.6, 11; Def. Opp. at 11 n.5, 14. In *Western Union*, the Proposal not only sought the establishment of a risk committee to assess *all* potential material risks to the company, but further required that the committee periodically report to shareholders the company's approach to monitoring and controlling these risks and how they were addressed. 2011 WL 916163, at *1 (Mar. 14, 2011); *see also Sempra*, 2011 WL 6425347, at *1 (Jan. 12, 2012) (granting no-action relief where proposal urged board to conduct oversight each year of political, legal and financial risks posed by operations in any country that may pose an elevated risk of corrupt practices and to publish an annual report to shareholders on this review).

In *Pepsi*, by contrast, the Division denied no-action relief, concluding that "the proposal focuses on the significant policy issue of the board's role in the oversight of the company's management of risk and does not seek to micromanage the company to such a degree that exclusion of the proposal would be appropriate." 2012 WL 542708, at *1 (Feb. 16, 2012). Here, the Proposal does not seek a broad risk assessment, but asks only for board oversight over consideration of certain products that pose a threat to Wal-Mart's reputation and its customer's safety and well-being. Nor does the Proposal by its terms demand a detailed report to shareholders.

arguments to this Court, Wal-Mart claims for the first time that the Proposal may be excluded

because it is "vague" or "misleading."  Def. Br. at 17-19.  As Wal-Mart acknowledges, this

narrow exception applies only when a proposal is "so inherently vague or indefinite that neither

the stockholders voting on the proposal, *nor* the company in implementing the proposal (if

adopted), would be able to determine with any reasonable certainty exactly what actions or

measures the proposal requires."  SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *4

(Sept. 15, 2004) (emphasis added); Def. Br. at 16.  Wal-Mart has failed to meet this high bar.

Because the Proposal focuses on corporate governance, the "action[] or measure[]" it

requests is the assignment of responsibility to the Committee to fill a gap in oversight with

regard to Wal-Mart's policies and standards regarding the sale of certain especially sensitive

products.  The Division has consistently determined that a proposal's use of terminology that

provides board flexibility and discretion is not excludable as "so inherently vague or indefinite."[7]

Rather, the use of non-micromanaging language is clearly a positive point.

Wal-Mart nonetheless argues that certain terms in the Proposal are too "indefinite," and

as a result the Proposal must be excluded.  In particular, Wal-Mart claims that the terms "values"

and "family or community" are impermissibly vague because values may differ among the

---

[7] *See, e.g.*, *Yahoo! Inc.*, 2007 WL 1175903, at *1, 3, 14 (Apr. 16, 2007) (denying no-action relief for proposal that sought to establish board committee on human rights, notwithstanding company's argument that definition of "human rights" varies from shareholder to shareholder); *Avaya Inc.*, 2006 WL 3007364, at *1, 24 (Oct. 18, 2006) (denying no-action relief where proposal requested that the board establish a pay-for-performance standard incorporating various principles where proponent explained that proposal provided reasonable degree of certainty along with discretion to the committee); *iRobot Corp.*, 2013 WL 267335, at *1, 6 (Mar. 26, 2013) (denying no-action relief where proponent noted that "[a] proposal is not vague for merely granting the board broad discretion"); *Walt Disney Co.*, 2012 WL 5267955, at *1, 19 (Dec. 13, 2012) (denying no-action relief for "proxy access" proposal where the proponent argued that "[t]he Proposal does what shareholder resolutions are supposed to do: raise a policy issue that is appropriate for shareholders to consider and leave the details of implementation to the company").

families or communities Wal-Mart serves.[8]  Def. Br. at 17-18.  However, the Proposal does not

address the values of every Wal-Mart community or customer, but only those "family and

community values integral to the Company's promotion of its brand."  There can be no dispute

that Wal-Mart's Board knows what values are integral to its brand, which is all that is required to

preclude exclusion under Rule 14a-8(i)(3).[9]  For that reason, the Division has routinely denied

no-action relief for proposals seeking consistency with a company's values.[10]  It is readily

apparent to Trinity, and thus almost certainly to Wal-Mart's other shareholders, that those values

focus on good corporate citizenship and caring for the families and communities Wal-Mart

serves.

      Numerous no-action letters make clear that because there is inherent ambiguity in all

language, the terms of a proposal need not, and could not, be defined with absolute precision.

Just last month in *NetApp, Inc.*, 2014 WL 1878421 (June 27, 2014), the Staff denied no-action

relief under Rule 14a-8(i)(3) for a proposal requesting board oversight over the company's

"policies and practice that relate to public policy including human rights, corporate social

---

[8] Wal-Mart also claims uncertainty in the terms "many," "offensive," and "substantial impairment."  These terms are both commonly used and defined in the dictionary and thus the claim that they are "inherently vague" is entirely without merit.  Indeed, Wal-Mart uses the term "offensive" in its music policy.  Edwards Decl. Ex. C (D.I. 49).

[9] Wal-Mart has consistently told its shareholders that family and community comprise its core values.  *See* Walmart 2014 Global Responsibility Report at 16 (2014), http://www.corporatereport.com/walmart/2014/grr/_pdf/Walmart_2014_GRR.pdf ("From the beginning, our values – integrity, opportunity, *family and community*, purpose and responsibility – have served as our core strengths and will continue to drive our success moving forward." (emphasis added)); Walmart 2013 Global Responsibility Report at 74 (2013) (same), http://corporate.walmart.com/microsites/global-responsibility-report-2013/pdf/Walmart_ GRR.pdf; Mike Duke, President and CEO of Wal-Mart Stores, Inc., Remarks at Walmart Shareholders' Meeting 2012: Walmart's Enduring Values ("Third, we believe in family and community. . . .  At Walmart, we are family and community.").

[10] *See, e.g.*, *Intel Corp.*, 2012 WL 160565, at *1-2 (Feb. 23, 2012); *Merck & Co.*, 2003 WL 942796, at *1 (Feb. 26, 2003); *Western Union Co.*, 2013 WL 368364, at * 1-2 (Mar. 14, 2013).

responsibility . . . and other public issues that may affect the Company's operations, performance or reputation, and shareholders' value."[11]  By contrast, the no-action letters Wal-Mart cites to support its "vagueness" claim are not relevant here.  Def. Br. at 16-17.  In the first instance, Wal-Mart cites a number of proposals where the proponent either failed to substantively address the company's objection[12] or provided no response at all to the no-action request,[13] and thus the Staff decided the request without opposition.  The remainder of Wal-Mart's letters contain statements that are simply not comparable to those identified by Wal-Mart in the Proposal.[14]

Finally, and in any event, should the Court determine that any portion of the Proposal is impermissibly vague but can be rectified by minor revision, Trinity respectfully requests that the Court so indicate and grant the requested declaratory and injunctive relief with such revision. Indeed, the Division has had "a longstanding practice of issuing no-action responses that permit

---

[11] *See also ConocoPhillips*, 2005 WL 484408, at *1 (Feb. 24, 2005) (denying no-action relief for proposal requesting that potential board candidates have "the highest personal and petroleum qualifications, integrity and values"); *Dominion Res., Inc.*, 2011 WL 494126, at *1-3 (Feb. 9, 2011) (same regarding request that board "be open and honest with us about the enormous costs and risks of new nuclear construction" and "invest in demand control and new renewable generation sources for the safest and quickest returns to shareholders, stakeholders, community and country"); *Assocs. First Capital Corp.*, 1999 WL 68604, at *1 (Feb. 12, 1999) (same with regard to request that the board "make greater efforts to ensure that women and persons from minority and racial groups are considered for nomination to the board"); *Kroger Co.*, 2002 WL 1052022, at *1 (Apr. 12, 2002) (same regarding proposal that board adopt policy to identify and label food products that contain genetically engineered ingredients until testing demonstrates that engineered crops are not harmful).

[12] *See Prudential Fin. Inc.*, 2007 WL 571098 (Feb. 16, 2007) *and Gen. Elec. Co.*, 2003  WL 262463 (Jan. 23, 2003), both from the same shareholder.

[13] *See Berkshire Hathaway Inc.*, 2011 WL 6859125 (Jan. 31, 2012); *Pugent Energy Inc.*, 2002 WL 523341 (Mar. 7, 2002); *Fuqua*, 1991 WL 178684 (Mar. 12, 1991).

[14] *See Home Depot, Inc.*, 2013 WL 1452862, at *1 (Mar. 28, 2013) (finding some basis for exclusion as vague proposal requiring board to "'strengthen' the 'weak' shareholder right to act by written consent"); *Staples, Inc.*, 2012 WL 748854, at *1 (Mar. 5, 2012) (same with regard to use of highly technical but unexplained use of the language pro rata vesting upon termination); *Boeing Co.*, 2011 WL 757455, at *1 (Mar. 2, 2011) (same with regard to use of undefined term "executive pay rights," but only on reconsideration after company noted recent no-action letters granting relief based on same phrase).

15

shareholders to make revisions that are minor in nature and do not alter the substance of the proposal."  SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *3.

### III.    THE COURT MUST INDEPENDENTLY EVALUATE WAL-MART'S WRONGFUL EXCLUSION OF THE PROPOSAL

As Trinity explained in its opening brief, in resolving the parties' cross-motions for summary judgment, the Court must "independently analyze" Wal-Mart's exclusion of the Proposal and defer to the Staff's no-action letter only to the extent of the persuasiveness of its reasoning.  Br. at 9, 18-19.  Here, the No-Action Letter provided *no* reasoning to which this Court could defer, instead simply offering the *ipse dixit* that there appeared to be "some basis" for exclusion because the Proposal "related to the products and services offered for sale" by Wal-Mart.  And even were the Court to conclude that reasoning is not required for a naked conclusion to be persuasive, here there is the additional problem that there is no suggestion that the Staff even considered whether the Proposal concerned transcendent issues of social and corporate policy, including Board oversight of Wal-Mart's commitment to good corporate citizenship.

Wal-Mart suggests that the Court should disregard the Staff's lack of explanation here because it "typically" reviews a request at three levels and has submitted a declaration to this effect of a former Division Director who is currently a partner at a law firm used by Wal-Mart.  Cross Decl. (D.I. 52).  Wal-Mart has also submitted a Staff prepared description of the process from an earlier date.  Wu Decl. Ex. A (D.I. 53).  A comparison of these two documents shows that the robustness  of the process recently has been reduced.  The Staff document describes one level of examination and three levels of further review.  The declaration describes one level of examination and two levels of review.  Most critically, a final review by a member of the Division's senior staff has been eliminated.  Thus, the court does not have the benefit of consideration of the proposal by the Commission or even a Member of the Division's senior

{FG-W0375127.}

staff.

In support of its argument that the Court should defer to a recommendation that not even the Division claims is binding, Wal-Mart cites an unpublished decision, *S&D Trading Academy, LLC v. AAFIS Inc.*, 336 F. App'x 443, 449 (5th Cir. 2009), for the proposition that no-action letters are "persuasive." Def. Opp. at 5-6 (also citing *Lindner v. Am. Express Co.*, No. 10 Civ. 2228 (JSR) (JLC), 2011 WL 2581745, at *4 (S.D.N.Y. June 27, 2011)). That decision is not precedential even in the Fifth Circuit. *See* Fifth Circuit Local Rule 47.5.4. In any event, Trinity does not dispute that no-action letters may be persuasive, provided of course that they first contain persuasive reasoning, as both the Third and Second Circuits require. Br. at 18. *Austin v. Consolidated Edison Co.*, 788 F. Supp. 192, 195 (S.D.N.Y. 1992), in turn, afforded "some deference" to a no-action letter after noting that the Division had issued more than 50 letters "on the precise subject" of companies seeking to exclude pension proposals, and that an SEC announcement reaffirmed this position. Here, no such deference is warranted for the cursory, one-line opinion provided by the Staff in the No-Action Letter regarding a novel Proposal.

Further, it bears emphasizing that the Staff did not resolve the merits of this dispute; it merely stated that it would not recommend enforcement action to the Commission because there "appears to be some basis" for exclusion under Rule 14a-8(i)(7). Wal-Mart seeks to transform this discretionary enforcement advice at the Staff level into informal agency decision-making worthy of *Chevron* deference. Even if this were informal agency action, it would still be subject on judicial review to the "hard look doctrine" to ensure that the agency had in fact engaged in real and considered decision making. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971). The no-action letter here would obviously flunk the hard look test because there is no sign that the Staff considered Trinity's arguments arising from the nature of its

proposal.  It makes no sense at all to end up treating informal Staff action with even greater deference than would be accorded informal agency action.  Accordingly, the no-action letter at issue here should be given little or no weight.

## IV.    TRINITY IS ENTITLED TO INJUNCTIVE RELIEF

A permanent injunction is warranted where:  (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the injunction will not result in greater harm to the defendant; and (4) the injunction would be in the public interest.  *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).  Each of these elements is readily satisfied here.

For the reasons set forth above, Wal-Mart has failed to justify excluding the Proposal under Rule 14a-8, and thus Trinity is entitled to summary judgment as a matter of law.  Because Wal-Mart also rests its arguments regarding harm to it and the public interest on the merits of its exclusion of the Proposal, *see* Def. Opp. at 19-20, Trinity has satisfied those elements as well. Indeed, the Court has already observed "that there is no significant cost, no real harm to Wal-Mart," and thus "it is likely the balance of harm favors the plaintiff."  Apr. 11, 2014 Hr'g Tr. at 25:24-24, 46:23.

Rule 14a-8 provides Trinity with the statutory right to communicate with shareholders through Wal-Mart's 2015 Proxy Materials, provided that it has complied with the Rule's procedural requirements and does not fall within an exception.  *See* Br. at 9.  In the event Wal-Mart refuses to include the Proposal in its proxy materials, that right will be permanently and irrevocably lost, and the damage suffered by Trinity incalculable.  Accordingly, every court to address the issue has held that "irreparable harm occurs to a shareholder whose proposal is wrongly excluded."  *N.Y.C. Emps.' Ret. Sys. v. Am. Brands, Inc.*, 634 F. Supp. 1382, 1388 (S.D.N.Y. 1986); *see also Lovenheim v. Iroguois Brands, Ltd.*, 618 F. Supp. 554, 561 (D.D.C.

18

1985) (finding plaintiff would "suffer irreparable harm by losing the opportunity to communicate his concern with those shareholders not attending the upcoming shareholder meeting"); *cf. Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 892 (S.D.N.Y. 1993) (enjoining Wal-Mart from omitting plaintiff's proposal from its proxy materials because it failed to sustain` its burden that the proposal was properly excludable).

Nevertheless, Wal-Mart asks this Court to be the first to hold that the unlawful exclusion of a proposal submitted under Rule 14a-8 does not qualify as irreparable harm.  Def. Opp. at 19. According to Wal-Mart, and notwithstanding the unanimous authority cited above, no court can ever enjoin a company from wrongfully excluding a shareholder proposal—even if the Staff denies no-action relief—because that shareholder has a separate ability to communicate with other shareholders pursuant to Rule 14a-7.  *See id.*  This is no answer.

Rule 14a-8 provides qualified shareholders of corporations the absolute right to have appropriate proposals *included in* the company's proxy materials, presented on equal terms with other qualified shareholder proposals and communications from the company itself as part of the same official proxy package.  Trinity has complied with Rule 14a-8's requirements, and thus Wal-Mart must include its Proposal.

By contrast, Rule 14a-7 permits a shareholder who does not or cannot comply with the procedural and substantive requirements of Rule 14a-8 to circulate its own proxy materials *in addition to* a company's official package (and at its own expense), which would arrive to shareholders as a separate shareholder communication, distinct from the proxy materials the company distributed.  Forcing Trinity to communicate with shareholders *outside of* Wal-Mart's proxy materials would put Trinity at a considerable disadvantage in gaining support for the Proposal.  Wal-Mart may not eviscerate Trinity's statutory right to inclusion under Rule 14a-8

19

and force it to communicate with shareholders under Rule 14a-7.

Moreover, Wal-Mart's "interpretation" of irreparable harm subverts the broad remedial purpose of Rule 14a-8 to enhance shareholder democracy.  By requiring all shareholder's whose proposals have been rejected, lawfully or unlawfully, to front the costs of printing and distribution, less wealthy shareholders will effectively be shut out of the process.  This is precisely the reason why the SEC afforded a distinct right to shareholders in Rule 14a-8.  Wal-Mart's attempt to deny that right to Trinity constitutes irreparable harm, and Trinity is therefore entitled to injunctive relief precluding Wal-Mart from issuing its proxy materials without including the Proposal.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Trinity's opening brief, Trinity respectfully requests that its motion for summary judgment be granted in all respects, and Wal-Mart's cross-motion for summary judgment be denied in its entirety.

/s/ Joel Friedlander
Joel Friedlander (Bar No. 3163)
Christopher M. Foulds (Bar No. 5169)
FRIEDLANDER & GORRIS, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500

*Attorneys for the Plaintiff Trinity Wall Street*

Dated:  July 30, 2014

20